# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

| | |
|---|---|
| **SABRINA JOHNSON-NIXON,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| | *  **CIVIL ACTION NO.: _____** |
| **v.** | * |
| | * |
| | * |
| **BRUNSWICK HOUSING AUTHORITY,** | * |
| **CITY OF BRUNSWICK, the CITY OF** | * |
| **BRUNSWICK, GEORGIA, WILLIAM L.** | * |
| **BAKER, individually, WILLIAM KITTS,** | * |
| **individually, REGINA M. MCDUFFIE,** | * |
| **individually, JAIMMIE HOWES,** | * |
| **individually, CHESTER DOBSON,** | *  **JURY TRIAL DEMANDED** |
| **individually, KAMAU DICKERSON,** | * |
| **individually,** | * |
| | * |
| **Defendants.** | * |
| _____ | * |

## COMPLAINT

COMES NOW PLAINTIFF SABRINA JOHNSON-NIXON and files this
Complaint against the BRUNSWICK HOUSING AUTHORITY, CITY OF
BRUNSWICK (alternatively, BHA or Authority), the CITY OF BRUNSWICK,
GEORGIA, WILLIAM L. BAKER, individually, REGINA M. MCDUFFIE, the
City Manager of the City of Brunswick, Georgia, individually, JAIMMIE HOWES,
the BHA Director of Human Resources, individually, and the individual members

of the BHA Board of Commissioners, WILLIAM KITTS, CHESTER DOBSON, and KAMAU DICKERSON all joined in this action individually, showing the Court as follows:

## INTRODUCTION

1.

This is a civil rights action for damages and injunctive relief for unlawful retaliation by the Defendants against the Plaintiff, Dr. Sabrina Johnson-Nixon, a Black, African American individual, because she exercised rights under the Civil Rights Act of 1964, the Civil Rights Act of 1866 and the Civil Rights Act of 1871 ("the Ku Klux Klan Act').

2.

In 2019, Dr. Johnson-Nixon filed a lawsuit in this Court against her employer, the Wayne County School District, alleging that she was harassed and terminated from employment because of her race. Because she exercised those rights under the Civil Rights Act of 1964 and the Civil Rights Act of 1866, Defendants in this case acted individually and in concert with each other to terminate Dr. Johnson-Nixon's employment. Because of her protected conduct, Defendants denied, and continue to deny, Dr. Johnson-Nixon the contract of employment offered, accepted, and performed by her.

3.

Dr. Johnson-Nixon's rights under the Civil Rights Act of 1964 were violated by her employers, Defendants Brunswick Housing Authority and the City of Brunswick, and her rights under the Civil Rights Act of 1866 have been violated by all Defendants.  The individual Defendants named herein agreed between and among themselves to retaliate against Dr. Johnson-Nixon and engaged in overt acts pursuant to that agreement in violation of 42 U.S.C. § 1985(2).  Defendants' agreement to deny Dr. Johnson-Nixon employment and the overt acts pursuant to that agreement caused her harm and constituted a criminal conspiracy in violation of 18 U.S.C. § 241.  The same individual Defendants, with knowledge of the wrongful acts conspired to be done, had the power to prevent or aid in preventing that conduct but either neglected or refused to do so in violation of 42 U.S.C. § 1986.  As a result of Defendants' wrongful actions and failures to act, Dr. Johnson suffered and continues to suffer substantial financial, physical, emotional, and reputational harm.

**JURISDICTION AND VENUE**

4.

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights) because the matters in controversy arise under the Constitution and laws of the United States.  This Court has further jurisdiction of Dr. Johnson-Nixon's claims arising under state law pursuant to 28

U.S.C. § 1367.

5.

Venue is proper in this Court under 28 U.S.C. § 1391 because it is a district where Defendants reside or do business and where a substantial part of the events giving rise to Dr. Johnson-Nixon's claims occurred.

6.

A Charge of Discrimination is pending before the U.S. Equal Employment Opportunity Commission (EEOC) and all conditions precedent to jurisdiction under the Civil Rights Act of 1866 and Section 2 and Section 6 of the Civil Rights Act of 1871 have occurred.

7.

All statutory or constitutional transgressions stated against Defendants here are, to the extent necessary and appropriate, pursued by Dr. Johnson-Nixon by and through Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

**PARTIES**

8.

Plaintiff Sabrina Johnson-Nixon is a Black, African American citizen of the United States and a resident of the State of Georgia and Glynn County.  Plaintiff holds a Bachelor of Arts degree in Sociology, a Masters of Education degree, and a Doctor of Education degree in Human Services Administration specializing in

psychology.  She served as a psychologist in Georgia school districts until she was hired by the City of Brunswick in October 2021.

9.

The Brunswick Housing Authority, City of Brunswick (alternatively, "the Authority" or "BHA") and the City of Brunswick, Georgia (the "City") are entities created, organized and existing under the laws of the State of Georgia.  They may be served with this Complaint by serving their respective chief executive officers in a time and manner consistent with Federal Rule of Civil Procedure 4 and O.C.G.A. § 9-11-4.

10.

At all times relevant to the allegations of the Complaint regarding hiring, refusing further employment and terminating Dr. Johnson-Nixon's employment with the Authority, Defendant William L. Baker served as the Authority's chief executive officer, to wit, its Interim Executive Director.  Before the Brunswick Housing Authority terminated his employment, Defendant Baker had final policy-making authority for the Authority with respect to most if not all operational decisions for the Authority, including without limitation the personnel and other decisions by him as alleged in this Complaint.  Mr. Baker may be served with this Complaint at his home address in Douglasville, Georgia in a time and manner consistent with Federal Rule of Civil Procedure 4.

11.

At all times relevant to the allegations of the Complaint regarding hiring, refusing further employment and terminating Dr. Johnson-Nixon's employment with the Authority, Defendant Regina M. McDuffie served as City Manager of the City of Brunswick, Georgia.  Defendant McDuffie has final policy-making authority for the City of Brunswick with respect to most if not all operational decisions for the City of Brunswick, including without limitation the personnel and other decisions by her as alleged in this Complaint.  She may be served with this Complaint by serving her at the offices of the City of Brunswick, Georgia in a time and manner consistent with Federal Rule of Civil Procedure 4.

12.

At all times relevant to the allegations of the Complaint regarding hiring, refusing further employment and terminating Dr. Johnson-Nixon's employment with the Authority, Defendant Jaimmie Howes served as Director of Human Resources of the Authority.  She may be served with this Complaint by serving her at the offices of the Authority in Brunswick, Georgia in a time and manner consistent with Federal Rule of Civil Procedure 4.

13.

At times relevant to the allegations of the Complaint regarding failure to hire, refusal to further employ, and terminate Dr. Johnson-Nixon's employment.,

Defendant William Kitts served as Chairman of the Board of Commissioners of the Authority.   In March 2022, Mr. Kitts was removed from the BHA Board of Commissioners for misconduct in office.   He may be served with this Complaint by serving him in a time and manner consistent with Federal Rule of Civil Procedure 4.

14.

At all times relevant to the allegations of the Complaint regarding hiring, refusing further employment and terminating Dr. Johnson-Nixon's employment with the Authority, Defendants Chester Dobson, and Kamau Dickerson were or remain members of the Brunswick Housing Authority Board of Commissioners. They may be served with this Complaint by serving them at their residences in Brunswick, Georgia or, from time to time, at the offices of the Authority in Brunswick, Georgia in a time and manner consistent with Federal Rule of Civil Procedure 4.

## STATEMENT OF FACTS

15.

In 2019, Plaintiff filed suit against her former employer, the Wayne County School District, for racial discrimination in violation of 42 U.S.C. § 1981 (the "prior lawsuit").   A copy of the Complaint is attached as Exhibit 1.   The matter was resolved in or around August 2020.

16.

From October 4, 2021, to approximately July 22, 2022, Dr. Johnson-Nixon was employed by the City of Brunswick, Georgia as its Director of Neighborhood and Community Services.

17.

On June 30, 2022, Dr. Johnson-Nixon was introduced to Brunswick Housing Authority Interim Executive Director William L. Baker who at that time requested that she send him her resume.

18.

On July 5, 2022, at the Authority's offices, Dr. Johnson-Nixon discussed her qualifications for the position of Assistant Executive Director and her interest in the position with Defendant Baker, Defendant Kitts, and Authority staff member Vincent Williams.

19.

On July 7, 2022, Dr. Johnson-Nixon interviewed for the position with Interim Executive Director Baker, Human Resources Director Jaimmie Howes, and Authority Board member Pamela Bailey.

20.

She was informed during the July 7, 2022, meeting that the position would transition Dr. Johnson-Nixon from Assistant Executive Director to Executive

Director over a six-month period, paying her $85,000 to start, and after sixty days her salary would increase to $90,000 and after six months, she would become Executive Director with a salary of $110,000.

21.

During the July 7, 2022, meeting, Dr. Johnson-Nixon was offered the position of Assistant Executive Director and she accepted the offer.

22.

The job offer was conditioned upon successful completion of a background check, motor vehicle driving report and a drug test.

23.

Dr. Johnson-Nixon successfully completed the background check, motor vehicle driving report and drug test.

24.

Before and after her interview and acceptance of the position, Defendant Baker was giving Dr. Johnson-Nixon work to perform, including drafting a new organizational chart, researching market wages per position title and category, creating a stakeholder list with the nature of their interests and discussion agendas, researching contractual issues related to housing maintenance and other work.  Work requested by Defendant Baker to be performed by Dr. Johnson-Nixon was pending

at the time the Authority failed to hire her, refused to further employ her, and terminated her employment.

25.

On or about July 8, 2022, the Brunswick Housing Authority, through its Director of Human Resources, confirmed in writing the Authority's offer of employment to Dr. Johnson-Nixon made by Defendant Baker and accepted by Dr. Johnson-Nixon during the meeting on July 7, 2022.

26.

After Defendant Baker offered Dr. Johnson-Nixon the Assistant Executive Director position, and on or before July 18, 2022, Defendant Baker and Defendant Kitts learned that Dr. Johnson-Nixon had filed the prior lawsuit against the Wayne County School District.

27.

After Defendant Baker offered Dr. Johnson-Nixon the Assistant Executive Director position, and on or before July 18, 2022, City Manager Regina M. McDuffie alerted Defendant Baker and Defendant Kitts that Dr. Johnson-Nixon had filed the prior lawsuit.

28.

On July 18, 2022, Dr. Johnson-Nixon met with Defendant Baker at his request.  Upon meeting with Defendant Baker, he immediately became irate, and

aggressively came from behind his desk, standing and screaming at Dr. Johnson-Nixon inches from her face.  Spittle from Mr. Baker's mouth spewed across Dr. Johnson-Nixon's face as he screamed.

29.

In the July 18, 2022, meeting, Defendant Baker demanded that Dr. Johnson-Nixon accept a job other than the position of Assistant Executive Director she was offered and accepted on July 7, 2022.  Defendant demanded that she accept a position he described as "residential."

30.

Dr. Johnson-Nixon asked questions and stated that she had no knowledge of the residential position.  She respectfully reminded Defendant Baker of her July 7, 2022, interview, and her acceptance of the Assistant Executive Director position, whereupon he became further irritated, more aggressive, and louder.

31.

In berating Dr. Johnson-Nixon during the July 18, 2022, meeting, Defendant Baker used intimidating and threatening words such as "you don't have a choice, you are going to fail at the Assistant ED position, I'm not going to train you, you do not know what you are doing."  Dr. Johnson-Nixon became afraid and asked him to please calm down and lower his voice, whereupon he raised the volume of his voice even louder. He forcefully clapped his hands

together within inches of her face, putting her in fear that he would strike her.

32.

Defendant Baker insisted that she sign documents to work in "residential," claiming that this was the position for which she made application to the Authority.  Upon Dr. Johnson-Nixon respectfully disagreeing that this was the position for which she applied, Defendant Baker ran out of the office and came back with a file and thrust it toward her face. stating "see, this is what you signed up for."  Dr. Johnson-Nixon read it and pointed to the Assistant Executive Director position.  At this point, Mr. Baker's outrageous behavior elevated further, and he ran to the door and pointed toward the exit, yelling "get out of my office" repeatedly.

33.

At Defendant Baker's direction and in fear of her safety, Dr. Johnson-Nixon left his office and the same day contacted BHA Commissioners and BHA attorney Ben Hartman of the law firm Hunter, Maclean, Exley & Dunn, informing them of Defendant Baker's conduct.  All parties contacted responded asking that Dr. Johnson-Nixon wait until they "take care of" the matter.

34.

On July 19, 2022, Director of Human Resources Jaimmie Howes delivered a letter to Dr. Johnson-Nixon instructing her that "a relevant portion of her

background" disqualified her from employment as the Assistant Executive Director and that she was "only qualified for the position of Resident Services Director."

35.

The "relevant portion of her background" deemed disqualifying was the fact that Dr. Johnson-Nixon had filed the lawsuit against the Wayne County School District in 2019.

36.

Communications between counsel Hartman and Defendant(s) regarding the ex post facto retraction of Plaintiff's employment offer were not privileged, as they were in aid and contemplation of the Defendants committing a violation of 18 U.S.C § 241 and 42 U.S.C. § 1981 and therefore fall within the "crime fraud" exception to any privilege Defendants or their attorneys may assert.

37.

Per Ms. Howes' July 19, 2022, correspondence, Dr. Johnson-Nixon was given only twenty-four (24) hours from the time she received the letter to accept the offer of the Resident Services Director position.  Ms. Howes' letter failed to provide any description of the position of "Resident Services Director."

38.

Within twenty-four (24) hours of receiving Dr. Howes' correspondence July 19, 2022, Dr. Johnson-Nixon requested from Ms. Howes a copy of the job

description for the "Resident Services Director" position.

39.

The Defendant Brunswick Housing Authority website as of June 27, 2022, https://web.archive.org/web/20220627171105/https://www.brunswickpha.org/careers, did not indicate that the position of "Resident Services Director" existed or that it was vacant.

40.

Indeed, the "Residential Services Director" position was created on July 18, 2022.

41.

The "Residential Services Director" position has never been, and is not now, posted on the Authority's website and, except for its ostensible availability for Dr. Johnson-Nixon's application, no notice of the position as available for applications has a been given on any website.

42.

The position of "Assistant Executive Director" remains vacant, according to Defendant Brunswick Housing Authority's website as of the date of the filing of this lawsuit.   See https://www.brunswickpha.org/careers.   After Defendant Baker's involuntary termination, the position of Executive Director was made available for

application through a private consultant and no notice of the available position was ever provided on the Authority's website.

43.

Dr. Johnson-Nixon corresponded with Defendant Baker, the Authority and its individual Commissioners on July 24, 2022, informing them that she was prepared to arrive at work on the start date of July 25, 2022 given by Defendants Baker and Howes. After no response was forthcoming, she again requested advisement on July 31, 2022. Still no response was received until August 5, 2022, whereupon Defendant Howes informed Dr. Johnson-Nixon that "BHA is looking into the matter and will respond."

44.

On August 10, 2022, Dr. Johnson-Nixon sought from the Authority and its attorney public records relating to interviews for the position of Assistant Executive Director and BHA standards for background checks whereupon Defendant Howes instructed Dr. Johnson-Nixon to ask the Authority's attorney, Ben Hartman, for those records (despite the fact that her request was also addressed to Mr. Hartman).

45.

Dr. Johnson-Nixon followed her instruction and requested the records from Mr. Hartman again on August 10, 2022. Mr. Hartman responded on August 19, 2022, that "conflicting schedules" caused him to delay getting back in touch with

Dr. Johnson-Nixon until the following week.  Mr. Hartman failed to get back in touch with Dr. Nixon the following week.

46.

Dr. Johnson-Nixon communicated again with Mr. Hartman on September 9, 2022, seeking information on her job as Assistant Executive Director.  On September 16, 2022, Mr. Hartman dated a letter stating to Dr. Johnson-Nixon his "understanding that you did not accept the Resident Services Director position and currently there is no employment offer pending."  Mr. Hartman intentionally failed to address her inquiry regarding the Assistant Executive Director position.

47.

On October 4, 2022, Dr. Johnson-Nixon filed a "grievance" addressed to the Authority's attorneys and copying the Mayor of the City of Brunswick regarding the manner in which she was treated by the Authority and Defendant Baker; and again, on October 5, 2022, she sought information on her job as Assistant Executive Director.  No correspondence was forthcoming from the Mayor – ever.  No correspondence was forthcoming from the Authority or its attorneys – ever.

48.

Dr. Johnson-Nixon's exercise of her rights under the Civil Rights Act of 1964 and the Civil Rights Act of 1866 was a substantial or motivating factor in the failure

of the Authority to hire her, refuse to further employ her, and to terminate Dr. Johnson-Nixon's employment.

## COUNT ONE

### CIVIL RIGHTS ACTS OF 1866 – RETALIATION FOR OPPOSING RACIALLY DISCRMINATORY EMPLOYMENT PRACTICES AND FOR PARTICIPATING IN A PROCEEDING

49.

Dr. Johnson-Nixon was an employee of the City of Brunswick through and including July 22, 2022.

50.

In July 2022, Dr. Johnson-Nixon applied for employment, was offered employment, accepted employment and the Brunswick Housing Authority suffered and permitted her to perform employment responsibilities as its Assistant Executive Director.

51.

As she was transitioning to new employment with the Authority, between July 7, 2022, and July 18, 2022 (or at other times), City Manager Regina M. McDuffie alerted Defendant Baker and Defendant Kitts that Dr. Johnson-Nixon had filed a federal lawsuit against, alleging racial discrimination.

52.

After the alert from Defendant McDuffie, Defendant Baker directed the

Authority's Director of Human Resources, Defendant Jaimmie Howes, to research the matter of whether Dr. Johnson-Nixon had filed such a lawsuit.

53.

Defendant Howes confirmed the fact of the lawsuit and transmitted that information to Defendants Baker and Kitts.

54.

Because Dr. Johnson-Nixon filed an EEOC Charge of Discrimination and the prior lawsuit against the Wayne County School District alleging racial discrimination, the Authority, through its executive agent Defendant Baker, failed to hire her, refused to further employ her, and terminated her employment.

55.

Because Dr. Johnson-Nixon filed an EEOC Charge of Discrimination and the lawsuit against the Wayne County School District alleging racial discrimination, Defendant McDuffie, had Dr. Johnson-Nixon designated as a permanent "no re-hire" by the City and refused to pay Dr. Johnson-Nixon accrued vacation pay upon termination of her employment in violation of City of Brunswick policy.

56.

The City of Brunswick and the Authority, through their respective executive agents, knowingly, willfully, and intentionally discriminated against Dr. Johnson-Nixon, as described above and as further to be proved at trial, because she

engaged in the protected activities of opposing racially discriminatory employment practices of the Wayne County School District, and participating in proceedings to enforce her rights and seek relief from those unlawful practices, as set provided in 42 U. S. C. § 2000e-3(a).

### 57.

Members of the Authority's Board of Commissioners and staff became aware of the unlawful conduct of Defendant Baker and Defendant McDuffie, including without limitation, the reason for Defendant Baker's failure to hire, refusal to further employ and terminate Dr. Johnson-Nixon's employment – that reason being her protected activity against the Wayne County School District.  The Authority, through its Board of Commissioners which has full and final policy making authority with respect to all relevant actions of the Authority, nevertheless affirmed and ratified the unlawful conduct of its Interim Executive Director, Defendant William L. Baker.

### 58.

The City of Brunswick, through the Mayor (with his penultimate control over membership of the Authority's Board of Commissioners), the City Council of the City of Brunswick, and the City Manager, knew the unlawful conduct of Defendant Baker and Defendant McDuffie, including without limitation, the reason for Defendant Baker's failure to hire, refusal to further employ and terminate Dr.

Johnson-Nixon's employment – that reason being her protective activity against the Wayne County School District as first disclosed to Defendant Baker by Defendant McDuffie. The City has full and final policy making authority with respect to all relevant actions of the City of Brunswick, but nevertheless affirmed and ratified the unlawful conduct of Defendant McDuffie, Defendant Baker, and the Authority.

59.

In retaliating against Dr. Johnson-Nixon for her protected activity, both the City of Brunswick and the Authority interfered with and denied Dr. Johnson-Nixon the rights and equal benefits enjoyed by her white counterparts in the terms and conditions of employment, as described above and to be further proved at trial, because of her race, as that language has been interpreted by the Courts, in violation of Section 1981.

60.

In retaliating against Dr. Johnson-Nixon for her protected activity, Defendants Regina M. McDuffie and William L. Baker interfered with and denied Dr. Johnson-Nixon the rights and equal benefits enjoyed by her white counterparts in the terms and conditions of employment, as described above and to be further proved at trial, because of her race, as that language has been interpreted by the Courts, in violation of Section 1981.

61.

Dr. Johnson-Nixon's protected activity was a substantial or motivating factor in the decisions of the City, through its Mayor, Council and executive agent, Regina M. McDuffie, and in the decisions of the Authority, through its executive agent Defendant Baker, to interfere with and deny Dr. Johnson-Nixon her rights and benefits under Section 1981.

62.

Any reason given for interference with and denial of Dr. Johnson-Nixon's rights and benefits under Section 1981, including any reason given for the described physical abuse and any reason given for failure to hire her, refusal to further employ her and termination of her employment, is false and a pretext for the discriminatory retaliation motivating the actions of Defendants.

63.

The interference with and denial of Dr. Johnson-Nixon's rights and benefits under Section 1981 by Defendants City of Brunswick, the Authority, Regina M. McDuffie, and William L. Baker were committed intentionally and cause Dr. Johnson-Nixon financial, physical, emotional, and reputational harm.

64.

As a direct, legal, and proximate result of the interference with and denial of Dr. Johnson-Nixon's rights under Section 1981, Dr. Johnson-Nixon has been injured

in an amount to be proven at trial.

65.

Defendants City of Brunswick, the Authority, Regina M. McDuffie, and William L. Baker acted under color of statute, ordinance, regulation, custom, or usage, and subjected Dr. Johnson-Nixon, or caused her to be subjected, to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

66.

Pursuant to 42 U.S.C. § 1983, Defendants City of Brunswick, the Authority, Regina M. McDuffie, and William L. Baker are jointly and severally liable to Dr. Johnson-Nixon for all damages arising from their joint and several conduct in violation of Dr. Johnson-Nixon's constitutional and statutory rights.

67.

Dr. Johnson-Nixon requests that the Court award compensatory damages and equitable relief against Defendants City of Brunswick and the Authority, and compensatory and punitive damages, jointly and severally, and equitable relief against the Defendants Regina M. McDuffie, and William L. Baker, all in an amount to be determined by evidence offered at trial of this matter.

## COUNT TWO

## CIVIL RIGHTS ACT OF 1871
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

### 68.

After the offer of employment as Assistant Executive Director was extended by Defendant Baker and accepted by Dr. Johnson-Nixon on July 7, 2022, Defendant McDuffie sought out Defendants Baker and Kitts and offered them information regarding Dr. Johnson-Nixon's prior participation in a lawsuit in United States District Court to remedy unlawful employment practices.

### 69.

When she revealed Dr. Johnson-Nixon's prior lawsuit to Defendants Baker and Kitts, Defendant McDuffie expressed her opinion that Dr. Johnson-Nixon should not be employed by the Authority.

### 70.

Defendants Baker and Kitts directed Defendant Howes, the Authority's Director of Human Resources, to verify the fact of the prior lawsuit, whereupon Defendant Howes, knowing the purpose of Defendants McDuffie, Baker and Kitts to deprive Dr. Johnson-Nixon of employment with the Authority, researched the internet and provided the results to Defendants Baker and Kitts, confirming that Dr. Johnson-Nixon filed a racial discrimination lawsuit in federal court in 2019 against

the Wayne County School District.

71.

Upon confirmation that Dr. Johnson-Nixon filed the lawsuit against the Wayne County School District, Defendants Baker and Kitts agreed between themselves and with Defendant McDuffie that Dr. Johnson-Nixon would not be employed by the Authority as its Assistant Executive Director because of the prior lawsuit against the Wayne County School District.

72.

Upon learning of Dr. Johnson-Nixon's prior lawsuit, and before and after the July 18, 2022 meeting between Defendant Baker and Dr. Johnson-Nixon, the named individual members of the Authority's Board of Commissioners including Defendant Kitts agreed between and among themselves and with Defendants Baker and McDuffie that Dr. Johnson-Nixon would not be employed by the Authority as its Assistant Executive Director because of her lawsuit against the Wayne County School District.

73.

The individual Defendants, and each of them, participated in a conspiracy for the purpose of injuring Dr. Johnson-Nixon in her person and property on account of her having attended and testified as a party and a witness in a proceeding in the United States District Court for the Southern District of Georgia, in violation of 42

U.S.C. §1985(2).

74.

Dr. Johnson-Nixon's then present employer, the City of Brunswick, through its City Manager, Defendant Regina M. McDuffie, conspired with the Authority – specifically, with Defendants William L. Baker and William Kitts – with the purpose of depriving Dr. Johnson-Nixon of employment and further employment with the Authority.

75.

Defendants, and each of them, have acted intentionally in furtherance of the conspiracy, and, as a direct, proximate, and legal result of such actions, have injured Dr. Johnson-Nixon, and continue to injure her, in her person and property, in violation of 42 U.S.C. § 1985(2).

76.

As a direct, legal, and proximate result of the Defendants' actions, as described herein, Dr. Johnson-Nixon suffers significant financial, physical, emotional, and reputational harm and other injuries to be proved at trial.

77.

The conduct of Defendants was willful, deliberate, and in conscious disregard of Dr. Johnson-Nixon's federally protected rights.

78.

Defendants are jointly and severally liable for the injuries caused by any one or more, or all of them, arising out of their conspiracy to violate Dr. Johnson-Nixon's civil rights.

79.

Accordingly, Dr. Johnson-Nixon requests that the Court award compensatory damages and equitable relief against each Defendant, and punitive damages against each individual Defendant, in an amount to be determined by evidence offered at trial of this matter.

## **COUNT THREE**

### **CIVIL RIGHTS ACT OF 1871**
### **NEGLECT AND REFUSAL TO PREVENT INTERFERENCE**
### **WITH CIVIL RIGHTS**

80.

Prior to commission of the wrongful conduct described herein and underlying the liability and damages set forth in Count Two of this Complaint, all Defendants had knowledge of the wrongful conduct conspired to be done.

81.

Despite their knowledge of the wrongful conduct conspired to be done, Defendants had the power to prevent or aid in preventing that conduct.

82.

Despite having the power to prevent or aid in preventing the wrongful conduct, each and every Defendant either neglected or refused to do so in violation of 42 U.S.C. § 1986.

83.

As a direct, legal, and proximate result of the Defendants' neglect and refusal, Dr. Johnson-Nixon suffers significant financial, emotional, physical, and reputational harm and other injuries to be proved at trial.

84.

The neglect and refusal of the Defendants to prevent or aid in preventing wrongful conduct was willful, deliberate, and in reckless and conscious disregard of Dr. Johnson-Nixon's federally protected rights.

85.

Accordingly, Dr. Johnson-Nixon requests that the Court award damages against each Defendant, jointly and severally, and for Dr. Johnson-Nixon in an amount caused by such wrongful acts which by reasonable diligence could have been prevented, such amount to be determined by evidence offered at a jury trial of this matter.

86.

Dr. Johnson-Nixon further requests that the Court award compensatory

damages and equitable relief against each Defendant, and punitive damages against each individual Defendant, in an amount to be determined by evidence offered at trial of this matter.

## COUNT FOUR

## ASSAULT AND BATTERY

### 87.

At the July 18, 2022, meeting with Defendant Baker, at Mr. Defendant Baker's request, Defendant Baker immediately became irate, closing in on Dr. Johnson-Nixon in a small room, and aggressively came from behind his desk, standing and screaming at Dr. Johnson-Nixon inches from her face.

### 88.

The escalating rage of Defendant Baker and his increasingly close proximity to Dr. Johnson-Nixon placed Dr. Johnson-Nixon in reasonable fear of bodily injury, knowing Defendant Baker, standing at approximately six feet four inches tall with an approximate weight of over two hundred pounds, had the apparent ability to inflict harm.   At close proximity, spittle from Mr. Baker spewed across Dr. Johnson-Nixon's face as he screamed, striking her against her will and thereby constituting a battery.

89.

Dr. Johnson-Nixon's reasonable fear, and the emotional and physical distress related to that fear, were the direct, legal, and proximate consequence of Defendant Baker's intentional, unwelcome, and illegal touching of her person.

90.

Under Georgia law, every unlawful touching is a battery, and each such battery is a physical injury.

91.

Defendant Baker is liable to Dr. Johnson-Nixon for all damages arising from his assault and, separately, for damages arising from his battery of Dr. Johnson-Nixon, including punitive damages pursuant to O.C.G.A. § 51-12-5.1, and including further Dr. Johnson-Nixon's reasonable attorney fees and other costs of litigation pursuant to O.C.G.A. § 13-6-11, all in an amount to be determined at trial.

## COUNT FIVE

### CIVIL RIGHTS ACT OF 1866
### RACIALLY AND RETALIATORY HOSTILE
### WORK ENVIRONMENT

92.

Dr. Johnson-Nixon's supervisor, Defendant Baker is liable to Dr. Johnson-Nixon for his commission of assault and, separately, Defendant Baker's battery upon Dr. Johnson-Nixon, and because of that conduct, Defendant Baker and the Authority

are further liable to Dr. Johnson-Nixon for that conduct under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

93.

Defendant Baker subjected Dr. Johnson-Nixon to harassment because of her race and because of her protected activity, that is, her opposition to unlawful employment practices of the Wayne County School District and because of her participation in proceedings to remedy that racial discrimination.

94.

Defendant Baker's harassment was, objectively and subjectively, severe such that it altered the conditions of her employment and created a hostile and abusive work environment in violation of Section 1981, which claim is brought pursuant to 42 U.S.C. Section 1983. Defendant Baker's retaliatory harassment of Plaintiff was sufficient to deter a reasonable person from making or pursuing a claim for discrimination and was intended to accomplish that purpose.

95.

As set forth in detail above, Dr. Johnson-Nixon complained through the Authority's Board of Commissioners and its attorneys, but no remedial action was forthcoming.

96.

These discriminatory actions by the Authority's executive agents, and the

inactions of the Authority were committed intentionally and, as a direct, legal, and proximate result of the Authority's actions or inactions, as described herein, Dr. Johnson-Nixon suffers significant financial loss, emotional distress, and other injuries to be proved at trial.

97.

The conduct of Defendant Baker and the Authority's Board of Commissioners was carried out by and with the knowledge of the Authority and was willful, deliberate, and in conscious disregard of Dr. Johnson-Nixon's federally protected rights.

98.

Accordingly, Dr. Johnson-Nixon requests that the Court award compensatory damages and equitable relief against the Authority, and punitive damages against Defendant Baker and any other individual Defendant shown by the evidence to have responsibility for the hostility, in an amount to be determined by evidence offered at trial of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(a)     Take jurisdiction of this matter and declare that Dr. Johnson-Nixon's rights under the statutes set forth above were violated by the Defendants, as respectively set forth in the Counts of this Complaint;

(b)     Permanently enjoin Defendants from further discriminating against Dr. Johnson-Nixon because of her protected activity, including opposition to racially discriminatory employment practices and because she participated in a proceeding to remedy such unlawful practices;

(c)     Award Dr. Johnson-Nixon compensatory damages, including without limitation, all lost wages, benefits, and other losses incurred as a result of the Defendants' unlawful conduct;

(d)     Order the Brunswick Housing Authority to hire or rehire Dr. Johnson-Nixon into her previous position of employment, or to award her front pay, as just, equitable and appropriate;

(e)     Award Dr. Johnson-Nixon punitive damages against the individual Defendants;

(f)     Award Dr. Johnson-Nixon pre-judgment and post-judgment interest;

(g)     Award Dr. Johnson-Nixon her costs and expenses of this action, including reasonable attorney fees as authorized by law;

(h)     Grant a trial by jury; and

(i)     Award such other and further legal and equitable relief as will effectuate the purposes of the referenced statutes or as the Court deems just and proper.

[date and signature on next page]

RESPECTFULLY SUBMITTED, this 14th day of July, 2023.

_/s/ S. Wesley Woolf_
S. WESLEY WOOLF
Georgia Bar No. 776175
_Attorney for Plaintiff_

WOOLF LAW FIRM
408 East Bay Street
Savannah, Georgia 31401
T: (912) 201-3696
F:  (912) 236-1884
woolf@woolflawfirm.net