# COMPLAINT - EXHIBIT 1

**Amended Complaint**

SABRINA JOHNSON-NIXON v. BRUNSWICK HOUSING AUTHORITY, CITY OF BRUNSWICK, the CITY OF BRUNSWICK, GEORGIA, WILLIAM L. BAKER, individually, WILLIAM KITTS, individually, REGINA M. MCDUFFIE, individually, JAIMMIE HOWES, individually, CHESTER DOBSON, individually, and KAMAU DICKERSON, individually

U.S.D.C.S.D. Ga.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

| | | |
|---|---|---|
| **SABRINA JOHNSON-NIXON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| | * | **CIVIL ACTION NO.: _____** |
| **v.** | * | |
| | * | |
| | * | |
| **WAYNE COUNTY SCHOOL DISTRICT,** | * | |
| | * | **JURY TRIAL DEMANDED** |
| **Defendant.** | * | |
| _____ | * | |

## AMENDED COMPLAINT

COMES NOW Plaintiff Sabrina Johnson-Nixon and, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), files this Amended Complaint against the Wayne County School District, showing the Court as follows:

## INTRODUCTION

1.

This is a civil rights action for damages and injunctive relief arising out of workplace conduct caused and perpetuated by the Wayne County School District in violation of Dr. Johnson-Nixon's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

2.

Dr. Johnson-Nixon seeks redress for racially motivated conduct perpetrated upon her similarly to the manner in which the School District perpetrated it upon other employees prior to Dr. Johnson-Nixon's tenure.  Dr. Johnson-Nixon reported the conduct to, and sought assistance from, all appropriate levels of supervision, but the School District tolerated the conduct and failed

to provide remedial action.  During the tenure of her employment, she further reported the conduct to U.S. Equal Employment Opportunity Commission.  The School District knowingly allowed a hostile work environment to grow, and retaliated against Dr. Johnson-Nixon through its intentional failure to act and by terminating her employment.

3.

Dr. Johnson-Nixon's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981, including the same right to make and enforce contracts and to the full and equal benefit of all laws and proceedings as is enjoyed by white citizens, have been violated.  In violating Dr. Johnson-Nixon's rights, the School District has caused her substantial financial and emotional harm.

**JURISDICTION AND VENUE**

4.

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights) because the matters in controversy arise under the laws of the United States, to wit, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

5.

Venue is proper in this Court under 28 U.S.C. § 1391 because it is a district where Defendant resides or does business and where a substantial part of the events giving rise to Dr. Johnson-Nixon's claims occurred.

6.

All conditions precedent to jurisdiction under the Civil Rights Act of 1866 have occurred.

**PARTIES**

7.

Plaintiff Sabrina Johnson-Nixon is a, black, African-American citizen of the United States

and a resident of the State of Georgia and Glynn County. She was employed with the School District when her employment was illegally terminated.

8.

The School District is organized and existing under the laws of the State of Georgia. The School District contracted with Dr. Johnson-Nixon to provide services as a psychologist. The School District can be served with this Amended Complaint by serving its counsel via the Court's CM/ECF system.

## STATEMENT OF FACTS

9.

Plaintiff Sabrina Johnson-Nixon is an experienced school psychologist who has over 25 years in public education and 13 years of experience working in that capacity. She possesses a Bachelor's Degree in Sociology, a Master's Degree in Special Education, an Educational Specialist Degree in School Psychology and a Doctorate in Education in Human Service Administration. Prior to her employment with the Wayne County School District, Dr. Johnson-Nixon was Director of Glynn County's Advancement Via Individual Determination (AVID) program (facilitating individual student instructional needs), and she was named Glynn County Special Education Teacher of the Year for Golden Isles Elementary Schools just two years prior to her employment with the Wayne County School District.

10.

Dr. Johnson-Nixon began her employment with the School District on or about July 29, 2015.

11.

Dr. Johnson-Nixon was qualified for the position for which she was employed by the

Case 2:23-cv-00064-LGW-BWC   Document 15   Filed 07/05/23   Page 4 of 21

School District.

12.

Dr. Johnson-Nixon was employed by the School District as a school psychologist under the direct supervision of Mary Wildes, a white, Caucasian individual who was the School District's Special Education Director.

13.

Dr. Johnson-Nixon was also supervised by Lisa Fore, a white, Caucasian individual also employed as a school psychologist.

14.

During Dr. Johnson-Nixon's employment with the School District, Ms. Fore was the only individual other than Dr. Johnson-Nixon employed as a school psychologist for the School District.

15.

Mary Wildes' direct supervisor was Superintendent Brinson.

16.

In August 2015, Ms. Fore defined the boundaries of Dr. Johnson-Nixon's employment, instructing her to follow Mrs. Wildes' directives, conduct herself as an intern psychologist, do what she was told, and "stay in her place."

17.

Ms. Fore explained to Ms. Johnson-Nixon what she meant by "stay in your place."  Ms. Fore stated "we have had black intern psychologists here before, and if they did not stay in their place, they did not make it here," whereupon Dr. Johnson-Nixon asked Ms. Fore what she meant. Ms. Fore explained that the black intern psychologists to whom she referred were not allowed to complete their internships and were forced to leave.

18.

Ms. Fore added that because the black intern psychologists did not "stay in their place," she did not help them, show them what to do, or give them supplies. Ms. Fore also said that she changed one black intern's report of a School District student so that the intern would "never work as a psychologist."

19.

In further explanation of her directive that Dr. Johnson-Nixon "stay in her place," Ms. Fore added that she once had an "Asian one" (and Asian intern psychologist) who was required to repeat her internship because Ms. Fore "needed a secretary." Ms. Fore mimicked the motions and voice of an Asian stereotype, bowing repeatedly with her hands placed together at chest level in front of her, and stating "yes Ms. Lisa, yes Ms. Lisa" as she described the Asian intern's secretarial function. To Dr. Johnson-Nixon's inquiry regarding the needless harm to the intern's career, Ms. Fore replied, "it's not my problem."

20.

On October 22, 2015, Dr. Johnson-Nixon sent an email to Ms. Wildes, Human Resources Director Merwan Massa, and Superintendent Brinson indicating that she was not receiving fair and impartial supervision, evaluation, and guidance.

21.

Dr. Johnson-Nixon also stated in the October 22, 2015 email her concern that information provided for her evaluation by Ms. Fore to Ms. Wildes was not accurate. Mr. Massa and Dr. Johnson-Nixon scheduled a meeting to discuss these concerns.

22.

On October 26, 2015, Dr. Johnson-Nixon met with Mr. Massa, telling him that she was

Case 2:19-cv-00098-LGW-BWC Document 1-2 Filed 07/05/23 Page 6 of 20

experiencing a great deal of stress and anxiety because of the biased, prejudiced, unfair and unequal treatment she was receiving from Ms. Wildes and Ms. Fore. Dr. Johnson-Nixon and Mr. Massa agreed to meet the following day to continue this discussion.

23.

On October 27, 2015, Mr. Massa emailed Dr. Johnson-Nixon to reschedule their meeting, stating that he needed to "do more research" before meeting with her again.

24.

On November 2, 2015, Mr. Massa met with Dr. Johnson-Nixon and informed her that he had spoken to everybody involved, and that Ms. Wildes would be scheduling a meeting with Dr. Johnson-Nixon regarding the issues that had been discussed.

25.

The meeting referenced by Mr. Massa occurred on November 6, 2015. Dr. Johnson-Nixon believed that she was meeting with Ms. Wildes and Special Education Facilitator Kim Sims to resolve the issues discussed with Mr. Massa, but instead, Dr. Johnson-Nixon was presented with a "Professional Development Plan for Improvement" (PDP) based on alleged performance failures. By the end of the meeting, however, Ms. Wildes told Dr. Johnson-Nixon that she was withdrawing the PDP and that the PDP was unnecessary.

26.

Dr. Johnson-Nixon scheduled a meeting with Superintendent Brinson and Mr. Massa to address her concerns regarding the PDP.

27.

On November 19, 2015, Dr. Johnson-Nixon met with Mr. Brinson and Mr. Massa. In the meeting, she explained to them the events that occurred and stated that Ms. Fore and Ms. Wildes

Case 2:19-cv-00098-LGW-BWC Document 1-2 Filed 07/17/19 Page 8 of 20

were discriminating and retaliating against her.

28.

During the November 19, 2015 meeting, Dr. Johnson-Nixon specifically informed Superintendent Brinson and Mr. Massa about the treatment of minority psychology interns and that both Ms. Fore and Ms. Wildes had directed Dr. Johnson-Nixon to "stay in her place" and to conduct herself as if she was an intern psychologist. Superintendent Brinson asked Dr. Johnson-Nixon if Ms. Wildes was a racist and Dr. Johnson-Nixon replied "absolutely."

29.

At the conclusion of the November 19, 2015 meeting, Superintendent Brinson informed Dr. Johnson-Nixon that he would review the information she provided.

30.

On November 19, 2015, after the meeting with Superintendent Brinson, Dr. Johnson-Nixon discovered Ms. Wildes and Ms. Fore conducting what appeared to be an audit of Dr. Johnson-Nixon's files. When Dr. Johnson-Nixon questioned what they were doing, Ms. Wildes and Ms. Fore replied that they were "just looking through" Dr. Johnson-Nixon's files. Dr. Johnson-Nixon sent an email to Superintendent Brinson and Mr. Massa informing them of this event.

31.

The next day, on November 20, 2015, Ms. Fore moved her belongings from the office they shared and began working out of another office. Ms. Fore withdrew from any communication with Dr. Johnson-Nixon except for the most necessary circumstances.

32.

From November 20, 2015 forward, employees in the Special Education Department withdrew from communicating with Dr. Johnson-Nixon, and Dr. Johnson-Nixon was excluded

from Special Education Leadership Team emails and meetings.

33.

Special Education Leadership Team meetings were essential for having knowledge of recent changes to policies, practices and training opportunities and requirements – matters necessary for performing the job of school psychologist.

34.

On November 30, 2015, in response to his request, Dr. Johnson-Nixon emailed Superintendent Brinson seeking equal treatment, freedom from retaliatory conduct, and a peaceful and professional resolution of the discriminatory treatment she was encountering in the work environment.

35.

On December 2, 2015, Superintendent Brinson responded to Dr. Johnson-Nixon's email indicating that he would speak to all parties involved to address Dr. Johnson-Nixon's concerns.

36.

On December 10, 2015, Ms. Sims presented Dr. Johnson-Nixon with the results of the audit that Ms. Wildes and Ms. Fore conducted on November 19, 2015. Ms. Sims gave Dr. Johnson-Nixon the project of completing numerous "corrections" to the files before Dr. Johnson-Nixon left for Christmas break.

37.

On January 7, 2016, Ms. Wildes resurrected the PDP she previously deemed unnecessary on November 6, 2015 (see paragraph 25, above), informing Dr. Johnson-Nixon of numerous additional job expectations.

38.

On January 7, 2016, Dr. Johnson-Nixon forwarded her concerns with the additional job expectations to Superintendent Brinson, and asked him about the status of her discrimination and retaliation complaint given to him on November 19, 2015.

39.

In the new year, Ms. Wildes began delaying approval of Dr. Johnson-Nixon's psychological reports, making it more difficult to meet Georgia Department of Education submittal deadlines, and sowing potential dissatisfaction from School District teachers needing Dr. Johnson-Nixon's support.

40.

For the first time since Dr. Johnson-Nixon raised concerns of Ms. Wildes' and Ms. Fore's racially discriminatory conduct in October and November 2015, Superintendent Brinson and Mr. Massa met with Dr. Johnson-Nixon on January 12, 2016 to discuss those concerns.

41.

On January 14, 2016, Ms. Wildes and Dr. Johnson-Nixon met for a "pre-evaluation" conference. During the pre-evaluation conference, Dr. Johnson-Nixon expressed to Ms. Wildes a willingness to build a professional relationship. Ms. Wildes responded "how disingenuous of you trying to be my friend when you go and tell my boss the superintendent that I am a racist, and I am a racist."

42.

On February 3, 2016, despite not having received notification, Dr. Johnson-Nixon discovered that the Special Education Leadership Team was meeting. Dr. Johnson-Nixon attempted to attend the meeting and Ms. Wildes instructed her in front of the other Team members

to leave the meeting.

### 43.

Later on February 3, 2016, Ms. Fore informed Dr. Johnson-Nixon that, at the direction of Ms. Wildes, she (Ms. Fore) would no longer answer questions from Dr. Johnson-Nixon because she was not Dr. Johnson-Nixon's supervisor.

### 44.

On February 5, 2016, Ms. Wildes informed Dr. Johnson-Nixon that she needed further evaluation and, unlike others at this time, would not be offered an employment contract for the next school year.

### 45.

On February 10, 2016, Ms. Wildes humiliated and demeaned Dr. Johnson-Nixon during a meeting. After the meeting, Dr. Johnson-Nixon was too upset to drive herself home. Her husband drove from Brunswick to bring her home. The next day at work, on February 11, 2016, Dr. Johnson-Nixon had a panic attack and was taken to the emergency room. On February 19, 2016, Dr. Johnson-Nixon emailed Mr. Massa providing him a doctor's note explaining her need for extended medical leave.

### 46.

From February 12 to March 16, 2016, Dr. Johnson-Nixon took medical leave to address her emotional distress.

### 47.

On February 17, 2016, filed Charge of Discrimination 415-2016-00418 with the Equal Employment Opportunity Commission for discrimination and retaliation based on race.

48.

On March 16, 2016, Ms. Wildes gave Dr. Johnson-Nixon a workload of student evaluations that could not be accomplished before the end of the year.

49.

On April 13, 2016, Dr. Johnson-Nixon informed Mr. Massa and Superintendent Brinson that Ms. Wildes was again humiliating her, instructing her again to act like an "intern psychologist."

50.

On May 2, 2016, Superintendent Brinson notified Dr. Johnson-Nixon that her employment with the Wayne County School District would terminate at the conclusion of the school year.

51.

Upon inquiry by Dr. Johnson-Nixon, Superintendent Brinson refused to give a reason for the decision to terminate her employment.

## COUNT ONE

### CIVIL RIGHTS ACTS OF 1866 – RETALIATION FOR
### OPPOSING RACIALLY DISCRMINATORY EMPLOYMENT PRACTICES

52.

The allegations set forth in paragraphs hereinabove and below, are incorporated by reference as though fully set forth herein.

53.

The School District, through its agents, knowingly, willfully and intentionally discriminated against Dr. Johnson-Nixon, as described above and as further to be proved at trial, because she opposed racially discriminatory employment practices of the School District, as prohibited by 42 U.S. C. § 2000e-3(a) and 42 U.S.C. § 1981.

54.

In retaliating against Dr. Johnson-Nixon for her opposition to its unlawful employment practices, the School District denied Dr. Johnson-Nixon the same right to make and enforce contracts (as defined in 42 U.S.C. § 1981), and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, as described above and to be further proved at trial, because of her race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

55.

Dr. Johnson-Nixon's opposition to the School District's racially discriminatory employment practices was a significant and determining factor in the decision of the School District to subject her to abusive treatment and to terminate her employment.

56.

The reasons given for denial of Dr. Johnson-Nixon's rights to make and enforce contracts and to the full and equal benefit of the laws, as described herein, including the reasons given for termination of her employment, are false and a pretext for the discriminatory retaliation motivating the School District's actions.

57.

The illegal actions of the School District were committed intentionally and caused Dr. Johnson-Nixon significant financial loss and emotional distress.

58.

As a direct, legal and proximate result of the School District's violations of Dr. Johnson-Nixon's legal rights, Dr. Johnson-Nixon has been injured in an amount to be proven at trial.

59.

The School District, acting under color of statute, ordinance, regulation, and with a policy, custom, or usage of allowing racial discrimination, subjected Dr. Johnson-Nixon, or caused her to be subjected, to the deprivation of rights, privileges, or immunities secured by the Civil Rights Act of 1866, 42 U.S.C. § 1981 through 42 U.S.C. § 1983.

60.

The School District is liable to Dr. Johnson-Nixon for all damages arising from its violation of Dr. Johnson-Nixon's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

61.

Dr. Johnson-Nixon requests that the Court award damages and equitable relief against the School District and for Dr. Johnson-Nixon in an amount to be determined by evidence offered at trial of this matter.

## COUNT TWO

### CIVIL RIGHTS ACT OF 1866 – RETALIATION FOR PARTICIPATING IN AN INVESTIGATION AND PROCEEDING

62.

The allegations set forth in paragraphs hereinabove and below, are incorporated by reference as though fully set forth herein.

63.

The School District, through its agents, knowingly, willfully and intentionally discriminated against Dr. Johnson-Nixon, as set forth above and as further to be proved at trial, because she made a charge, testified and participated in an investigation and proceeding, as prohibited by 42 U.S.C. § 2000e-3(a) and 42 U.S.C. § 1981.

64.

In retaliating against Dr. Johnson-Nixon for filing Charge of Discrimination 415-2016-00418 and for testifying and participating in the EEOC's investigation and proceeding, the School District denied Dr. Johnson-Nixon the same right to make and enforce contracts (as defined in 42 U.S.C. § 1981), and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, as described above and to be further proved at trial, because of her race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

65.

Dr. Johnson-Nixon's filing of Charge of Discrimination 415-2016-00418 and her testimony and participation in the EEOC's investigation and proceeding were significant and determining factors in the decision of the School District to subject her to abusive treatment and to terminate her employment.

66.

The reasons given for denial of Dr. Johnson-Nixon's rights to make and enforce contracts and to the full and equal benefit of the laws, as described above, are false and a pretext for the discriminatory retaliation motivating their actions.

67.

The actions of the School District were committed intentionally and caused Dr. Johnson-Nixon significant financial loss and emotional distress.

68.

As a direct, legal and proximate result of the School District's violations of Dr. Johnson-Nixon's legal rights, Dr. Johnson-Nixon has been injured in an amount to be proven at trial.

69.

The School District, acting under color of statute, ordinance, regulation, and with a policy, custom, or usage of allowing racial discrimination, subjected Dr. Johnson-Nixon, or caused her to be subjected, to the deprivation of rights, privileges, or immunities secured by the Civil Rights Act of 1866, 42 U.S.C. § 1981 through 42 U.S.C. § 1983.

70.

The School District is liable to Dr. Johnson-Nixon for all damages arising from its violation of Dr. Johnson-Nixon's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

71.

Dr. Johnson-Nixon requests that the Court award damages and equitable relief against the School District and for Dr. Johnson-Nixon in an amount to be determined by evidence offered at trial of this matter.

## COUNT THREE

## CIVIL RIGHTS ACT OF 1866 – RACIALLY HOSTILE WORK ENVIRONMENT

72.

The allegations set forth in paragraphs hereinabove and below are incorporated by reference as though fully set forth herein.

73.

Dr. Johnson-Nixon's supervisors, Ms. Fore and Ms. Wildes, subjected her to harassment because of her race, and that harassment was, objectively and subjectively, severe and pervasive such that it altered the conditions of her employment and created a hostile and abusive work environment in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

74.

As set forth in detail above, Dr. Johnson-Nixon complained through the School District's chain of command, and according to the School District's policies, to prevent and correct the harassment and to seek prompt remedial action, but no such remedial action was forthcoming.

75.

The conduct of Ms. Fore and Ms. Wildes, and the acts and omissions of Superintendent Brinson and Human Resources Director Massa, were carried out by and with the knowledge of the School District and were willful, deliberate, and in conscious disregard of Dr. Johnson-Nixon's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

76.

These discriminatory actions and inactions of the School District were committed intentionally and, as a direct, legal and proximate result of the School District's actions or inactions, as described herein, Dr. Johnson-Nixon suffered significant financial loss, emotional distress and other injuries to be proved at trial.

77.

The School District, acting under color of statute, ordinance, regulation, and with a policy, custom, or usage of allowing racial discrimination, subjected Dr. Johnson-Nixon, or caused her to be subjected, to the deprivation of rights, privileges, or immunities secured by the Civil Rights Act of 1866, 42 U.S.C. § 1981 through 42 U.S.C. § 1983.

78.

The School District is liable to Dr. Johnson-Nixon for all damages arising from its violation of Dr. Johnson-Nixon's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

79.

Dr. Johnson-Nixon requests that the Court award damages and equitable relief against the School District and for Dr. Johnson-Nixon in an amount to be determined by evidence offered at trial of this matter.

## COUNT FOUR

## CIVIL RIGHTS ACT OF 1866 – DISPARATE TREATMENT

80.

The allegations set forth in paragraphs hereinabove and below are incorporated by reference as though fully set forth herein.

81.

Dr. Johnson-Nixon was harassed and her employment was terminated for conduct similar or identical to the conduct of her white, Caucasian counterparts also employed by the Wayne County School District who were not harassed and whose employment was not terminated.

82.

The actions and inaction of the School District in harassing Dr. Johnson-Nixon and terminating her employment and not harassing and terminating the employment of similarly situated white co-workers denied her the rights enjoyed by her white counterparts to make and enforce her contract of employment and to have the full and equal benefit of all laws as is enjoyed by white citizens, as described above and to be further proved at trial, because of her race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

83.

The actions of the School District were committed intentionally and caused Dr. Johnson-Nixon significant financial loss and emotional distress.

Case 2:23-cv-00098-LGW-BWC Document 5 Filed 11/05/19 Page 18 of 20

84.

As a direct, legal and proximate result of the School District's violations of Dr. Johnson-Nixon's legal rights, Dr. Johnson-Nixon has been injured in an amount to be proven at trial.

85.

The School District, acting under color of statute, ordinance, regulation, and with a policy, custom, or usage of allowing racial discrimination, subjected Dr. Johnson-Nixon, or caused her to be subjected, to the deprivation of rights, privileges, or immunities secured by the Civil Rights Act of 1866, 42 U.S.C. § 1981 through 42 U.S.C. § 1983.

86.

The School District is liable to Dr. Johnson-Nixon for all damages arising from its violation of Dr. Johnson-Nixon's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

87.

Dr. Johnson-Nixon requests that the Court award damages and equitable relief against the School District and for Dr. Johnson-Nixon in an amount to be determined by evidence offered at trial of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(a)     Take jurisdiction of this matter and declare that Dr. Johnson-Nixon's rights under the statutes set forth above were violated by the School District;

(b)     Permanently enjoin the School District from further discriminating against Dr. Johnson-Nixon because of her race;

(c)     Award Dr. Johnson-Nixon compensatory damages, including without limitation, all back pay, benefits, and other losses incurred as a result of the School District's

unlawful discrimination;

(d)    Order the School District to rehire Dr. Johnson-Nixon into her previous position of

employment, or to award her front pay, as just, equitable and appropriate;

(e)    Award Dr. Johnson-Nixon pre-judgment and post-judgment interest;

(f)    Award Dr. Johnson-Nixon her costs and expenses of this action, including

reasonable attorney fees as authorized by law;

(g)    Grant a trial by jury; and

(h)    Award such other and further legal and equitable relief as will effectuate the

purposes of the referenced statutes or as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 5th day of November, 2019.


*S. Wesley Woolf*
S. WESLEY WOOLF
Georgia Bar No. 776175
*Attorney for Plaintiff*

WOOLF LAW FIRM
408 East Bay Street
Savannah, Georgia 31401
T:  (912) 201-3696
F:  (912) 236-1884
woolf@woolflawfirm.net

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| SABRINA JOHNSON-NIXON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | CIVIL ACTION NO.: |
| | * | 2:19-cv-00098-LGW-BWC |
| v. | * | |
| | * | |
| | * | |
| WAYNE COUNTY SCHOOL DISTRICT, | * | |
| | * | |
| Defendant. | * | |
| _____ | * | |

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing "Amended Complaint" with the Clerk of the Court using the CM/ECF system, which will notify:

HARBEN, HARTLEY & HAWKINS, LLP
Brian C. Smith
340 Jesse Jewell Parkway, Suite 750 Gainesville
Georgia 30501
Telephone: (770) 534-7341
Facsimile: (770) 532-0399
Email: bsmith@hhhlawyers.com

This 5th day of November, 2019.

*/s/ S. Wesley Woolf*
S. WESLEY WOOLF
Georgia Bar No. 776175
*Attorney for Plaintiff*