# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

| | |
|---|---|
| SABRINA JOHNSON-NIXON, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION |
| | ) NO:2:23-CV-00084-LGW-BWC |
| BRUNSWICK HOUSING AUTHORITY, | ) |
| et al. | ) |
| | ) |
| **Defendants.** | ) |

---

## DEFENDANT WILLIAM KITTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT

COMES NOW Defendant William Kitts and, pursuant to Fed.R.Civ.P. 12(b)(6), moves this court to dismiss Plaintiff's Amended Complaint (Doc. 41) as it relates to the causes of action against him. As shown below, Plaintiff's claims against Defendant Kitts are subject to dismissal because she fails to allege plausible claims against Defendant Kitts under 42 U.S.C. § 1981 and Title VII (retaliation and retaliatory and racial hostile work environment) (Counts 1 and 5), 42 U.S.C. § 1985(2) and (3) conspiracy claims, and the derivative 42 U.S.C. § 1986 claim (Counts 2 and 3) and, even if she did, Defendant Kitts is entitled to qualified immunity for Plaintiff's 42 U.S.C. §§ 1981 and 1985 claims. Accordingly, and for the reasons set forth set forth below, Plaintiff's claims against Defendant Kitts should be dismissed with prejudice.

## I. INTRODUCTION

In this five-count, multi-party lawsuit, Plaintiff purports to bring claims under 42 U.S.C. §§ 1981 (1983), 1985(2),(3), and 1986, Title VII, as well as state law tort claims for

assault and battery.[1] (Doc. 41).  In general, Plaintiff's claims are based on her allegation that Defendant Brunswick Housing Authority ("BHA") made a job offer to her, retracted it, and subsequently offered her a different position in retaliation for Plaintiff's filing of a Title VII lawsuit against a *different* employer, the Wayne County School District, *three years earlier* (the "2019 lawsuit") (Doc. 41, at pp. 36–55).

With respect to Defendant Kitts, Plaintiff's contention is *not* that he, individually, was a decisionmaker for any of the alleged employment actions, but that he purportedly engaged in a "conspiracy" in violation of 42 U.S.C. § 1985(2) and (3) along with Defendant Baker (the decisionmaker) and others as part of a scheme to retaliate against her because of their alleged discovery of the 2019 lawsuit.  Plaintiff's claims against Defendant Kitts rely *entirely* on her speculative and conclusory allegation that he only became aware of the 2019 lawsuit *after* BHA made its first offer of a job to Plaintiff.  This is notwithstanding the fact that, at the time of the BHA's first job offer, the 2019 lawsuit had been a matter of public record for *three years*.[2]  Simply put, Plaintiff has not and cannot make any plausible allegations about Defendant Kitts' personal knowledge (or lack thereof) of the 2019 lawsuit. Instead, Plaintiff's allegation that Defendant Kitts only learned about the 2019

---

[1] Plaintiff's state law claims of assault and battery (Count 4) are brought only against Defendant Baker.  (Doc. 41, ¶¶ 87–91).

[2] In addition to being available via PACER, a simple Google search reveals that this Court's April 7, 2020 Order denying the Wayne County School District's motion to dismiss is available on Justicia.  See https://law.justia.com/cases/federal/district-courts/georgia/gasdce/2:2019cv00098/78785/16/ (last checked on January 29, 2024).  That same order is also on a website maintained by archive.org.  See https://archive.org/details/gov.uscourts.gasd.78785/gov.uscourts.gasd.78785.16.0.pdf (last checked on January 29, 2024).

lawsuit after the BHA offered her a position is precisely the type of unsubstantiated and conclusory allegation that Twombly and Iqbal prohibit. The same is true of her 42 U.S.C. § 1985(2) "conspiracy" claim because it, also, relies entirely on her conclusory allegations regarding Defendant Kitts' knowledge. Further, Plaintiff's 42 U.S.C. § 1985(3) claim fails as a matter of law because Plaintiff does not allege that the purported conspiracy was motivated by racial or other class-based discrimination.

Additionally, even if Plaintiff could establish plausible 42 U.S.C. § 1985(2) and (3) claims, which she cannot, Defendant Kitts is entitled to qualified immunity. In this regard, there are no allegations that Defendant Kitts was even the decisionmaker for any of the alleged personnel decisions in this case and/or that he could or did take any adverse employment actions. Furthermore, there is no clearly established law that would have given Defendant Kitts fair warning that he could be held individually liable under the circumstances of this case. Accordingly, all of Plaintiff's claims against Defendant Kitts should be dismissed.

## II.    FACTUAL ALLEGATIONS RELEVANT TO DEFENDANT KITTS

Plaintiff Sabrina Johnson-Nixon alleges that in 2022, while working for Defendant City of Brunswick, she discussed her interest in the position of Assistant Executive Director at the BHA with, among other individuals, Defendants Kitts, the then-Chairman of the BHA's Board of Commissioners, and Charles Baker, then-BHA's Interim Executive

Director.  (Doc. 41, ¶¶ 10, 13, 16–18).[3] Plaintiff alleges that Defendant Baker "had final policy-making authority for the Authority with respect to most if not all operational decisions for the Authority, including without limitation the personnel and other decisions by him as alleged in this Amended Complaint." (Id., ¶ 10). Similarly, Plaintiff alleges that "the [BHA] through its Board of Commissioners … has full and final policy making authority with respect to all relevant actions of the Authority."  (Id., ¶ 57). Plaintiff makes no allegation that Defendant Kitts, individually, had any authority to make decisions or take actions related to personnel decisions at issue in this case, including hiring her or retracting or modifying any job offers.

Plaintiff subsequently interviewed with Defendants Baker and Jaimmie Howes, BHA's then-Human Resources Director, and BHA Board of Commissioners member Pamela Bailey (who is not named in the lawsuit).  (Id., ¶ 19). Plaintiff further alleges that, on July 7, 2022, she interviewed and was verbally offered the position of Assistant Executive Director by Defendant Baker with an unconditional promise that she would transition to the Executive Director over a six-month period (apparently, regardless of job performance).  (Id., ¶ 20, 21).  Plaintiff goes on to assert that Defendant Baker gave her work to perform "before and after her interview and acceptance of the position." (Id., ¶ 24). Next, on July 8, 2022, Plaintiff received a written confirmation from the BHA that the Assistant Executive Director position had been offered and had been accepted by Plaintiff.

---

[3] When considering a motion to dismiss, the Court must accept the complaint's factual allegations as true.  See Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).  Accordingly, for purposes of this motion only, Defendant Kitts accepts as true the Complaint's well-pled factual allegations, but not the legal assertions set forth therein.

(Id., ¶ 25).

Plaintiff next broadly asserts that "after Defendant Baker offered [Plaintiff] the Assistant Executive Director position, and on or *before* the time the Authority failed to hire her, refused to further employer her, and terminated her employment," Defendant Baker and Defendant Kitts allegedly "learned" about Plaintiff's 2019 Title VII racial discrimination lawsuit against Wayne County School District when Defendant Regina McDuffie, an employee of Plaintiff's then-employer, the City of Brunswick, "alerted" them about it. (Id., ¶¶ 26, 27; Doc. 41, pp. 36-55) (emphasis in bold and italics)). Plaintiff provides no supporting factual allegations as to *how* she knew what Defendant Kitts' personal knowledge was in "or before" July 2022, the date of the alleged employment decisions in this case. Plaintiff also provides no supporting factual allegations establishing how she knew that in or before July 2022, that Defendant Kitts was *unaware* of Plaintiff's 2019 lawsuit. In other words, Plaintiff does not provide any allegations establishing *her* personal knowledge of *Defendant Kitts'* personal knowledge.

Plaintiff next asserts that, on July 18, 2022, she had a meeting with Defendant Baker where he "forcibly clapped his hands," became "irate," and "scream[ed]" at her. (Id., ¶¶ 28, 31). It was at this meeting that Plaintiff alleges Defendant Baker told her that he believed she had previously applied for the position of Residential Services Director (also referred to in Amended Complaint as "Resident Services Director") and that she "[did] not know what [she] was doing" and would "fail at the Assistant ED position." (Id., ¶¶ 29, 31, 32, 40). Subsequently, Plaintiff alleges that BHA sent her a letter stating that "a relevant portion of her background" disqualified her from the Assistant Executive Director position

and that, as Defendant Baker had previously explained, she was "only qualified for the position of Resident Services Director." (Id., ¶ 34). Plaintiff does not allege that the salary offered for the Resident Services Director was less than the Assistant Executive Director's salary and/or otherwise describe the differences between the job duties of each position that would make the Resident Services Director a less desirable position. Although Plaintiff alleges that the "relevant portion of her background" that disqualified her was her 2019 lawsuit, Plaintiff provides no factual allegations to support that conclusory allegation. (Id., ¶ 35).

Plaintiff goes on to assert that the position of Resident Services Director was not available as an open position prior to July 18, 2022 but admits that BHA offered it to her. (Id., ¶¶ 37, 40). Plaintiff does not allege that she accepted the position of Residential Services Director.

As far as Defendant Kitts is concerned, Plaintiff's specific allegations are as follows:

- At some point, Defendant McDuffie "sought out" Defendant Kitts and "alerted" and Defendant Baker and him that Plaintiff had filed a lawsuit "to remedy unlawful employment practices." (Id., ¶ 68);

- At some point, Defendants Kitts and Baker purportedly directed Defendant Howes, then-BHA's Human Resource Director, to "verify the fact of the prior lawsuit," which she allegedly did by "research[ing] the internet." (Id., ¶ 70);

- At some point, Defendant Kitts (a non-decision maker) allegedly "agreed" with Defendant Baker and Defendant McDuffie (an employee of Plaintiff's then-employer, the City of Brunswick, and a non-decisionmaker) that Plaintiff would not get the Assistant Executive Director position because of her 2019 lawsuit. (Id., ¶ 71); and

- At some point, Defendant Kitts "agreed" with "the named individual Board members" and Defendant McDuffie (a non-BHA employee) that Plaintiff would not get the Assistant Executive Director position because of her 2019 lawsuit (Id., ¶ 72).

- Plaintiff, however, does not allege that the Board ever voted on any personnel decision affecting Plaintiff or otherwise took any affirmative action with respect to any of the employment decisions at issue in this case.

Although Plaintiff contends that the alleged retaliation by the Defendant City of Brunswick, Defendant BHA, and Defendants McDuffie and Baker was based on her race, she provides no facts to support that allegation and makes no such allegation against Defendant Kitts, individually. (Id., ¶¶ 59, 60). As to Defendant Kitts and the other individual Defendants, Plaintiff seeks compensatory and punitive damages and equitable relief. (Id., ¶ 79, Prayer for Relief).

## III.  ARGUMENT AND CITATION OF AUTHORITY

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) ("a formulaic recitation of the elements of a cause

of action will not do").

In determining whether a complaint survives a motion to dismiss, courts have applied a two-step analysis. The review begins by identifying allegations within the complaint that are mere conclusions, "[as] [c]onclusory allegations are not entitled to the assumption of truth." Estate of May v. Fulton County, 2020 WL 5541086, at *3 (N.D. Ga. Aug. 13, 2020) (citing McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018)). Then, "'after disregarding conclusory allegations, [the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the plaintiff must plead to state a claim] and determine[s] whether those allegations 'plausibly give rise to an entitlement to relief.'" Id. (quoting Finley, 907 F.3d at 1333) (alterations in original)). "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (punctuation omitted).

A.  **Plaintiff Fails to Allege Plausible violations of 42 U.S.C. § 1981 and Title VII against Defendant Kitts (Count 1).**

Plaintiff's allegations of retaliation pursuant to 42 U.S.C. § 1981 and Title VII are directed solely at Defendants Baker and McDuffie, the City of Brunswick, and the BHA. (Doc. 41, ¶¶ 49–67). Specifically, Plaintiff alleges that those Defendants (and only those Defendants) interfered with and denied Plaintiff's rights under Title VII and Section 1981 because of her 2019 lawsuit and "her race." (Id.). Plaintiff makes no similar allegation that

Defendant Kitts violated her rights under § 1981 or Title VII and seeks no remedy specifically against Defendant Kitts for those alleged violations. (Id., *e.g.* ¶¶ 63, 65, 67).

Even if Plaintiff had attempted to assert those claims against Defendant Kitts, they should be dismissed as a matter of law. Specifically, there is no individual liability under Title VII, so any Title VII claim against Defendant Kitts must be dismissed (to the extent one has been asserted). Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006). And Plaintiff's § 1981 claim, which shares the same analysis as Title VII claims, would fail because Plaintiff has not alleged the necessary elements for a claim of individual liability against Defendant Kitts under § 1981. Turnes v. AmSouth Bank, 36 F.3d 1057, 1060 (11th Cir.1994) (Title VII and § 1981 share the same substantive analysis for claims of employment discrimination). Specifically, to prevail on a § 1981 individual liability claim, Plaintiff must not only show that (1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is some causal relation between the two events," but also she must show "'some ***affirmative link*** to causally connect the actor with the discriminatory action'" Marshall v. Tidal Wave Response, LLC, 649 F. Supp.3d 1299, 1310 (N.D. Ga. 2022) (quoting Johnson v. Fam. Prac. & Inj. Ctr., Inc., 437 F. Supp.3d 1108, 118 (M.D. Fla. 2020) (emphasis and italics added); See also, Burstein v. Emtel, Inc., 137 F. App'x 205, 208 (11th Cir. 2005) (per curiam) (finding that an individual who did not participate in a decision not to offer an employment contract to the plaintiff-employee was not liable under Section 1981 because he did not participate in the decision).

Here, Plaintiff makes ***no allegations*** that Defendant Kitts, individually, was the decisionmaker for any of the alleged personnel decisions alleged in this case and therefore

she fails to allege the requisite "affirmative link" for a § 1981 claim against Defendant Kitts. Accordingly, to the extent this claim is actually asserted against Defendant Kitts, Plaintiff has not plausibly alleged a 42 U.S.C. § 1981 claim against him and any such claim should be dismissed.[4]

**B.** **Plaintiff's 42 U.S.C. § 1985 Conspiracy Claims Against Defendant Kitts Should be Dismissed Because They Lack Plausibility and He is Otherwise Entitled to Qualified Immunity. (Count 2)**

        1.      <u>Plaintiff has not alleged a plausible 42 U.S.C. § 1985 Conspiracy Claim against Defendant Kitts.</u>

Section 1985 "provides a cause of action for victims of conspiracies aimed at interfering with civil rights" and, generally, makes it unlawful for two or more persons to conspire for the purposes of depriving any person or class of persons "due course of justice" (42 U.S.C. § 1985(2)) or the "equal protection of the law" (42 U.S.C. § 1985(3)). <u>Chua v. Ekonomou</u>, 1 F.4th 948, 955 (11th Cir. 2021); <u>see also</u> <u>Chavis v. Clayton Cnty. Sch. Dist.</u>, 300 F.3d 1288, 1292 (11th Cir. 2002); <u>Rodemaker v. City of Valdosta Bd. of Educ.</u>, No. 7:21-CV-76(HL), 2022 WL 3927821, *4 (M.D. Ga. August 31, 2022) (citing 42 U.S.C. § 1985(3)). Section 1985 is divided into "three subsections that address different types of conspiracies." <u>Chua,</u> 1 F.4th at 955. Here, Plaintiff is proceeding under 42 U.S.C. § 1985(2) and (3) but fails to establish either as a matter of law.

       *a. Plaintiff cannot establish a 42 U.S.C.§ 1985(2) claim.*

Under the first clause of 42 U.S.C. § 1985(2), it is "unlawful for two or more persons

---

[4] In the event that Plaintiff is actually attempting to assert a 42 U.S.C. § 1981 claim against Defendant Kitts, he reserves the right to raise other arguments including, but not limited to, qualified immunity.

to conspire to deter, by force, intimidation or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein." Chance v. Cook, 50 F.4th 48, 51 (11th Cir. 2022) (citing 42 U.S.C. § 1985(2)). To survive a motion to dismiss on this cause of action, Plaintiff must sufficiently allege that: (1) a conspiracy existed; (2) retaliation was spawned by the plaintiff's attendance or testimony in federal court; (3) an act in furtherance of the conspiracy; and (4) injury. Foster v. Pall AeroPower, Corp., 111 F. Supp.2d 1320, 1322.

Here, Plaintiff fails to sufficiently allege a 42 U.S.C. § 1985(2) claim against Defendant Kitts under the unique facts of this case. Plaintiff's claim is not a "typical" § 1985(2) claim where there is no question of when the employer knew of the employee's protected activity and the employer's actions were noticeably different before and after an employee's protected activity. See Reid v. City of Atlanta, No. 1:08-cv-01846-JOF, 2010 WL 1138456, *17 ( N.D. Ga. March 22, 2010) (42 U.S.C. § 1985(2) conspiracy found when plaintiff, who had been employed for nine years, received "some form of punishment" by his employers only after he had testified in federal court); Odum v Rayonier, Inc., No. CV204-190, 2005 WL 3440817 (S.D. Ga. Dec. 14, 2005) (42 U.S.C. § 1985(2) conspiracy found when plaintiff, who had been employed for over 20 years with "very good" performance evaluations, began receiving poor performance evaluations and other employment actions, only after he testified in a federal trial against his employer's interest). In those types of cases, the timing of when the employer became aware of the protected activity is not an issue and plaintiff can raise at least the inference of retaliation based solely on allegations about the employer's difference of treatment before and after

the protected activity.

In contrast, here, in the absence of an established relationship between Plaintiff and Defendant Kitts, Plaintiff must meet two burdens to allege a plausible § 1985(2) claim against Defendant Kitts. First, she must plausibly allege that Defendant Kitts only had personal knowledge of Plaintiff's 2019 lawsuit *after* BHA extended the first job offer to because the retaliation is (allegedly) based only on Defendant Kitts and others newly becoming aware of the 2019 lawsuit only after the first job offer. Second, Plaintiff must sufficiently allege that her 2019 lawsuit was the reason for the BHA changing its job offer, i.e., "retaliation spawned by the plaintiff's attendance or testimony in federal court." Aque v. Home Depot U.S.A., Inc., 629 F.Supp.2d 1336, 1343 (N.D. Ga. 2009). Plaintiff cannot meet either of these burdens.

With respect to Plaintiff's burden to demonstrate Defendant Kitts' knowledge, it is axiomatic that Plaintiff has not and cannot allege that she knew the extent of Kitts' personal knowledge of her 2019 lawsuit and when he obtained such knowledge. Her contentions are particularly dubious given that the pleadings and filings related to the lawsuit were open records under the Georgia Open Records Act, O.C.G.A. § 50-18-70 *et seq*., and available via PACER (and, as noted above, several other websites) to anyone. Plaintiff even admits that her 2019 lawsuit was publicly available on the internet before the BHA's first job offer to her. (Id., ¶ 70) and had been public knowledge for years before she expressed interest in working with BHA.

Plaintiff attempts to circumvent this inconvenient fact by baldly asserting in a conclusory manner that Defendant Kitts "learned that [Plaintiff] had filed her [2019

lawsuit]" only *after* the BHA's first job offer "and on or **before** the time the Authority failed to hire her, refused to further employ her, and terminated her employment." (Doc. 41, ¶ 26) (emphasis added). But Plaintiff fails to allege *any* facts supporting that *she* knew what *Defendant Kitts'* personal knowledge was at any time – much less in the 10-day period between the BHA's job offers – let alone how she could have possibly known it. Plaintiff simply does not allege any facts to plausibly support her allegation that the publicly filed 2019 lawsuit was somehow "new" information to Defendant Kitts. Indeed, Plaintiff's vaguely worded allegation, *i.e.*, "on or **before** the time the Authority failed to hire," acknowledges as much – she has no idea when Defendant Kitts became aware of the 2019 lawsuit. (Id., at 26) (emphasis added). Said another way, Plaintiff fails to allege any facts supporting her implicit allegation that Defendant Kitts was *unaware* of her 2019 lawsuit prior to BHA's first job offer.

Without factual substantiation of the conclusory allegation that Defendant Kitts "newly" had knowledge of the 2019 lawsuit after the BHA's first job offer, Plaintiff lacks a reason for Defendant Kitts to (allegedly) conspire and retaliate against her.[5] Instead, by attempting to plead what Defendant Kitts' personal knowledge was (a critical element for her § 1985(2) claim), Plaintiff is simply pleading "facts that are 'merely consistent with' a defendant's liability," which "'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). This pleading failure

---

[5] Plaintiff also pleads no motive for Dr. Kitts to retaliate and conspire against her for filing a lawsuit several years prior against a *different employer* with whom he had no relationship.

alone is fatal to Plaintiff's 42 U.S.C. § 1985(2) claim against Defendant Kitts.

Plaintiff's claim of "retaliation" is also not plausible because Plaintiff acknowledges that Defendant Baker told her the reason BHA changed its job offer. Specifically, Plaintiff admits that Defendant Baker vehemently expressed concern that she would "fail at the Assistant ED position," and explained that she was not qualified for the Assistant Executive Director position because she would "not know what [she] is doing" and was instead qualified for the position of Residential Services Director. (Id., ¶¶ 29, 31, 32, 34). In fact, Plaintiff acknowledges that Defendant Baker told her he thought she had applied for the Residential Services Director position. (Id., ¶ 32). Consistent with this stated reason (Plaintiff's lack of qualification), even under Plaintiff's alleged timeline of events in this case, BHA continued to want to hire Plaintiff for the job for which she was qualified *after* Defendants Kitts and Baker allegedly became aware of the 2019 lawsuit. (Id., ¶ 37). Regardless of whether it was the position Plaintiff wanted, BHA's continued offer of employment to Plaintiff for the job for which it believed she was qualified completely negates any reasonable inference of retaliation. In contrast, to support her claim that BHA's change in job offers was in retaliation for her 2019 lawsuit, Plaintiff alleges nothing but layers upon layers of impermissible conclusory allegations with no substantiating factual allegations.

Plaintiff has also failed to allege an injury, an essential element of 42 U.S.C. § 1985(2). See Foster v. Pall Aeropower Corp., 111 F.Supp.2d 1320, 1325 (M.D. Fl. 2000) (court will not presume injury without loss of promotion, salary or employment). Here, BHA offered Plaintiff a position for which it believed she was qualified, the Residential

Services Director position. Plaintiff does not allege that the Residential Services Director was offered at a different salary or was less desirable than the Assistant Executive Director position. Ultimately, then, it was Plaintiff's choice not to accept the BHA's offer that caused any alleged injury – not any alleged action taken by Defendant Kitts.

### b. Plaintiff cannot establish a 42 U.S.C.§ 1985(3) claim.

Section 1985(3) "provides a cause of action for victims of conspiracy whose 'purpose' is to 'depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law.'" Chua, 1 F.4th at 955. Importantly, a claim under this subsection "requires the plaintiff to show the conspiracy was motivated by 'racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. In evaluating 42 U.S.C. § 1985(3) claims at the motion to dismiss stage, courts consider whether the plaintiff specifically alleged that the "purpose or intent of the conspiracy was to deprive [the plaintiff] of the 'equal protection of the laws' or 'equal privileges and immunities under the laws' based on [plaintiff's] race or any other class-based reason." Id. at 956 (citing 42 U.S.C. § 1985(2)–(3)).

Here, in contrast to her § 1981 claim against Defendants Baker and McDuffie in which she alleges her race was a motivating factor in their alleged actions (Doc. 41, ¶¶ 56, 60), with respect to her § 1985(3) claim, Plaintiff does not make any allegations that the alleged "conspiracy" was based on her race or any other class-based characteristic or any other federal law. Specifically, as noted above, Plaintiff does not bring a 42 U.S.C. § 1981 claim against Defendant Kitts and Title VII cannot be the basis for a § 1985(3) claim. Dickerson v. Alachua Com'n, 200 F.3d 761,766 (11th Cir. 2000) (citing Great

American Fed. Sav. & Ln Assoc. v. Novotny, 442 U.S. 366, 372 (1979) (§ 1985(3) may not be used to enforce rights created by Title VII)). Instead, Plaintiff explicitly alleges that "Defendants Baker and Kitts agreed between themselves and with Defendant McDuffie that [Plaintiff] would not be employed by the Authority as its Assistant Executive Director **because of [her] prior lawsuit against the Wayne County School District.**" (Doc. 41, ¶ 71) (emphasis added). Plaintiff's § 1985(3) claim, then, fails to allege specifically that Defendant Kitts' alleged retaliatory motive was based on her race or the violation of any other law. Chua, 1 F.4th at 955; Dickerson, 200 F.3d at 766. Accordingly, Plaintiff has failed to allege a plausible 42 U.S.C. § 1985(3) claim, and it should be dismissed.

Even if Plaintiff had asserted that the alleged conspiracy was based on her race, it is not a plausible claim because Plaintiff pleads no direct evidence of racial discrimination, no allegations that similarly situated white applicants were treated differently, and no circumstantial evidence that raises an inference of discriminatory intent. While the Eleventh Circuit has not definitely required comparator evidence for a § 1985 claim, here, Plaintiff has made no allegations to support a conclusory allegation that the alleged "conspiracy" was based on her race. See, Rice-Lamar v. City of Ft. Lauderdale, Fl., 232 F.3d 836, 843-44 n.13 (11th Cir. 2000) (Court noted lack of comparator evidence, but did not analyze § 1985(3) claim; see also Lee v. Christian, 98 F.Supp.3d 1265, 1275 (S.D. Ga. 2015) (plaintiff not required to identify a comparator for § 1985(3) claim at the motion to dismiss stage when alleging direct evidence of discrimination or a "convincing mosaic of circumstantial evidence"). And even if Plaintiff attempt to raise such an inference, it is facially non-sensical to allege on the one hand that Plaintiff's race motivated the alleged

conspiracy to retract one job offer, when on the other hand, she was, in fact, offered another employment position.

      2.      <u>Defendant Kitts has qualified immunity from Plaintiff's 42 U.S.C. § 1985 (2) and (3) claims.</u>

Defendant Kitts is entitled to qualified immunity for Plaintiff's 42 U.S.C. § 1985 (2) and (3) claims. <u>Ziglar v. Abasi</u>, 582 U.S. 120, 150 (2017) (applying qualified immunity analysis to § 1985(3) claim); <u>see also</u>, <u>Reid</u>, 2010 WL 1138456, at *20.[6] "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established' statutory or constitutional rights of which a reasonable [official] would have known.'" <u>Marbury v. Warden</u>, 936 F.3d 1227, 1232 (11th Cir. 2019) (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)). Significantly, the immunity is "from suit rather than a mere defense to liability." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 525 (1985). As such, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation*." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991). To be entitled to qualified immunity, the defendants "must establish that "[they] were acting within the scope of [their] discretionary authority." <u>Millspaugh v. Cobb Cnty. Fire and Emergency Svcs.</u>, No. 22-10132, 2022 WL 17101337, *10 (11th Cir. November 22, 2022) (cleaned

---

      [6] In <u>Chua</u>, the Eleventh Circuit recognized that <u>Ziglar</u> abrogated its decision in <u>Burrell v. Bd. of Trs. of Ga. Mil. Coll.</u>, 970 F.2d 785, 794 (11th Cir. 1992), which had held that qualified immunity did not apply to § 1985(3) claims because class-based invidious discriminatory purpose was a necessary element. <u>Chua</u>, 1 F.4th at 956. Even before <u>Ziglar</u>, the Northern District of Georgia found in <u>Reid</u> that, even under <u>Burrell</u>, government defendants were entitled to qualified immunity for § 1985(2) claims because they (unlike § 1985(3) claims) are not discrimination-based claims.

up). Here, to the extent Defendant Kitts performed any acts, they would have been exercised as a discretionary function, and it is axiomatic that employment decisions are inherently discretionary in nature. See, e.g., Smith v. Lomas, 45 F.3d 402, 406 (11th Cir. 1995). Once the discretionary authority issue is resolved, the burden shifts to plaintiff to show that: (1) defendant violated her constitutional rights; and (2) defendant's conduct was prohibited by clearly established law. Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014).

To overcome qualified immunity, a plaintiff must point to specific actions of each defendant which violate clearly established law. Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). "This burden is not easily discharged: That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Jones v. Ward, 514 F. App'x 843, 846-47 (11th Cir. 2013). A "plaintiff cannot rely on general, conclusory allegations or broad legal truisms to show that a right is clearly established." Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994); White v. Pauly, 137 S. Ct. 548, 552 (2017) (reiterating the longstanding principle that clearly established law should not be defined at a high level of generality and must be particularized to the facts of the case.) "The salient question in a qualified immunity analysis is whether the official had fair warning that their conduct was unlawful." Jackson, 2022 WL 3973705, *4 (cleaned up). To meet this burden, a plaintiff must point to "prior case law (from the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state) that is 'materially similar'" to the facts and circumstances at

issue so as to allow the court "to consider whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case." <u>Gaines v. Wardynski</u>, 871 F.3d 1203, 1209 (11th Cir. 2017) (cleaned up).

To determine whether the law was clearly established, "[c]ase law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." <u>Priester v. City of Riviera Beach, Fla.</u>, 208 F.3d 919, 926 (11th Cir. 2000). In essence, a right is only clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." <u>Mullenix v. Luna</u>, 577 U. S. 7, 11 (2015) (per curiam) (internal quotation marks omitted). Although Supreme Court "case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." <u>White v. Pauly</u>, 137 S. Ct. 548, 551 (2017). Put another way, "[q]ualified immunity affords protection to all but the plainly incompetent or those who knowingly violate the law." <u>Bates v. Harvey</u>, 518 F.3d 1233, 1242 (11th Cir. 2008) (emphasis supplied); <u>See</u>, <u>Rivas-Villegas v. Cortesluna</u>, 142 S.Ct. 4, 7-8 (2021) (reversing lower court's denial of qualified immunity).

Here, Plaintiff does not allege that Defendant Kitts, as an individual, had "final policymaking authority" with respect to any personnel actions taken in this case. Instead, Plaintiff alleges only that Defendants Baker and the BHA had "final policymaking authority." (Doc. 41, ¶¶ 10, 57). Other than conclusory allegations, Plaintiff also does not allege that Defendant Kitts took any affirmative employment actions in this case.

Specifically, Plaintiff does not allege that Defendant Kitts "failed to hire [Plaintiff], refused to further employer her, and terminated her." <u>Compare</u>, <u>Reid</u>, 2010 WL 1138456, *18 (each defendant "acted in carrying out their conspiracy when they put down their recommendations in writing" which ultimately resulted in [plaintiff] being suspended or demoted."). Plaintiff does not even allege that Defendant Kitts voted as a Board member for any of the employment actions alleged in this case. Indeed, Plaintiff fails to allege that Defendant Kitts engaged in *any* conduct that would support even an inference that he was motivated by retaliation.

Defendant Kitts also did not violate any clearly established law. Simply put, Defendant did not have and could not have had "fair warning" that a non-decisionmaker, who took no affirmative employment actions against the Plaintiff, could be involved in a "conspiracy" related to employment actions even if he (allegedly) engaged in one conversation about Plaintiff's 2019 Lawsuit, a matter of public information. There are no precedential cases within this Circuit containing facts even remotely similar to those alleged in this case – which, it should be noted, differs significantly from the typical retaliation case, i.e., one in which a current employer takes an adverse action against an employee for engaging in protected activity against *that employer* – which could have possibly put Defendant Kitts on the requisite notice. Therefore, Defendant Kitts is entitled to qualified immunity.

**C.** **<u>Plaintiff's 42 U.S.C. § 1986 Claim (Count 3) Against Defendant Kitts Should be Dismissed for Failure to State a Claim.</u>**

Plaintiff's failure to sufficiently allege a 42 U.S.C. § 1985 claim against Defendant

Kitts bars Plaintiff's derivative 42 U.S.C. § 1986 claim against him. "Section 1986 is, in effect, a 'derivative of § 1985,' and a violation of § 1986 cannot be established 'without establishing a violation of § 1985.'" Park v. City of Atlanta, 120 F.3d 1157, 1160 (11th Cir. 1997); Morast v. Lance, 807 F.2d 926, 930 (11th Cir. 1987) ("a § 1986 claim is predicated on a successful conspiracy action under § 1985"). As explained in Paragraph B, above, Plaintiff does not have a valid 42 U.S.C. § 1985 claim against Defendant Kitts, and, therefore, she also does not have a § 1986 claim against Defendant Kitts. Accordingly, Plaintiff's 42 U.S.C. § 1986 claim against Defendant Kitts should be dismissed for failure to state a claim.

**D.** **Plaintiff Fails to Allege a Plausible 42 U.S.C. § 1981 claim (Racial and Retaliatory Hostile Work Environment) Against Defendant Kitts. (Count 5).**

Plaintiff's allegations concerning retaliatory and racial hostile work environment under 42 U.S.C. § 1981 are directed at Defendants Baker and the BHA – not Defendant Kitts, as an individual. Specifically, Plaintiff alleges that those Defendants (only) are "liable to [her]" for Defendant Baker's alleged assault and battery." (Doc. 41, ¶ 92). Additionally, Plaintiff alleges that "Defendant Baker's harassment was, objectively and subjectively, severe such that it altered the conditions of her employment and created a hostile work environment in violation of Section 1981" and that Defendant BHA "took no remedial action." (Doc. 1, ¶¶ 94, 95). But rather than limit her request for damages to only the Defendants against whom she makes allegations, Plaintiff seeks "punitive damages against Defendant Baker any other individual Defendant shown by the evidence to have responsibility for the hostility…" (Id., ¶ 98.). Essentially, Plaintiff requests that this Court

allow her to conduct discovery to shore up her 42 U.S.C. § 1981 hostile work environment allegations. This is inappropriate. "Discovery *follows* 'the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when h[er] complaint failed to state a claim.'" Carter v. DeKalb Cnty., 521 Fed. App'x 725, 728 (11th Cir. 2013) (quoting Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997))(emphasis in original. Plaintiff has not pled a 42 U.S.C. § 1981 retaliatory and racial hostile work environment claim against Defendant Kitts, and therefore, it should be dismissed for failure to state a claim.

Finally, this cause of action should be dismissed because Plaintiff simply does not allege any conduct which rises to the level of severity or pervasiveness to constitute an actionable hostile work environment claim. In this regard, courts in the Eleventh Circuit have routinely deemed much more egregious circumstances than "harassment" alleged here to *not* constitute a racially hostile work environment. Harper v. ULTA Salon Cosmetics & Fragrance, Inc., No. 1:05-CV-1285-TWT, 2007 WL 528088 (N.D. Ga. Feb. 13, 2007) (no hostile work environment when Plaintiff was aware of six allegedly racist statements, was subjected to a transfer and also an alteration of his work schedule); McCann v. Tillman, 526 F.3d 1370 (11th Cir. 2008) (affirming summary judgment on a hostile work environment claim where African American plaintiff was referred to as "girl," defendant allegedly referred to a former black employee as a "n***** bitch" and declared that "he had never received the 'n***** vote' and that he didn't want it"); Barrow v. Ga. Pac. Corp., 144 F. App'x. 54, 57–58 (11th Cir. 2005) (summary judgment on hostile work environment claim despite use of racial symbols and slurs, including the display of a rebel

flag and the letters "KKK" at the workplace; plaintiff being called "n*****," "boy," and "black boy"). Here, Plaintiff's allegations fail to come close to meeting the requisite standard, and certainly come nowhere close to establishing individual liability against Defendant Kitts.

## IV.  CONCLUSION

For all the reasons set forth above, Defendant Kitts' Motion to Dismiss should be granted, and all of Plaintiff's claims pled against him (Counts 1, 2, 3, and 5) should be dismissed.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Kirsten S. Daughdril*
John D. Bennett
Georgia Bar No. 059212
jbennett@fmglaw.com
Kirsten S. Daughdril
Georgia Bar No. 633350
Kirsten.daughdril@fmglaw.com

*Attorneys for Defendant William Kitts*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T:  770.818.0000
F:  770.937.9960

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANT WILLIAM KITTS' MOTION TO DISMISS AMENDED COMPLAINT AND BRIEF IN SUPPORT OF THEREOF** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to all counsel of record who are CM/ECF system participants.

This 7th day of February, 2024.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Kirsten S. Daughdril*
Kirsten S. Daughdril
Georgia Bar No. 633350

*Attorney for Defendant William Kitts*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T: 770.818.0000
F: 770.937.9960
E: Kirsten.daughdril@fmglaw.com