IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| SABRINA JOHNSON-NIXON, | |
| Plaintiff, | CIVIL ACTION NO.: 2:23-cv-84 |
| v. | |
| BRUNSWICK HOUSING AUTHORITY, CITY OF BRUNSWICK, et al., | |
| Defendants. | |

## O R D E R

Plaintiff filed a Motion to Compel Discovery. Doc. 74. Defendant Brunswick Housing Authority ("BHA") filed a Response. Doc. 76. Plaintiff filed a Reply. Doc. 77. Defendant filed a Sur-Reply. Doc. 78. For the following reasons, the Court **DENIES** Plaintiff's Motion. However, as explained below, Plaintiff may, but is not required to, file a new motion to compel related to communications involving Hycall Brooks. If Plaintiff elects to do so, she must file her motion within 21 days of the issuance of this Order. Plaintiff's motion to compel shall be limited to not more than 10 pages and shall only address the question of privilege over communications involving Brooks. Failure to file the motion within that time will be deemed a waiver by Plaintiff of any challenge on this issue. Defendants shall have 14 days to respond to any forthcoming motion to compel. Defendants' brief shall be not more than 10 pages. No additional briefing is permitted. The parties are encouraged to confer on this issue prior to submitting their additional briefs.

## BACKGROUND[1]

In 2022, Plaintiff worked for the City of Brunswick, Georgia, as the City's Director of Neighborhood and Community Services.  Doc. 41.  Plaintiff alleges that she expressed interest in becoming the Assistant Executive Director for BHA, and she interviewed for the position. Plaintiff alleges BHA's interim executive director offered her the Assistant Executive Director position and for Plaintiff to become the BHA Executive Director after six months.  Plaintiff alleges that BHA's human resources director confirmed the offer of employment in writing and confirmed Plaintiff's acceptance of the offer.  Plaintiff alleges that after she accepted the position with BHA, the City Manager for the City of Brunswick (Plaintiff's then employer) informed individuals at BHA that she (Plaintiff) had sued a different employer years earlier.  Plaintiff alleges that BHA then rescinded (or attempted to rescind) the employment offer and offered her a less desirable position.  Plaintiff asserts that BHA took these actions because it learned that Plaintiff had sued her prior employer.

Based on these facts, Plaintiff sued the City of Brunswick, the City Manager, BHA, and various individuals connected to BHA.  Doc. 41.  Plaintiff asserts five claims: retaliation in violation of Title VII of the Civil Rights Act; conspiracy to interfere with civil rights; neglect and refusal to prevent interference with civil rights; assault and battery; and racially and retaliatory hostile work environment.  Doc. 41.

---

[1]    The portions of this Background Section describing the events leading up to this lawsuit are based largely on Plaintiff's allegations in her Amended Complaint and, therefore, are not assumed to be true. Doc. 41.  Even so, most of the facts described her appear to be undisputed.  Where there is an apparent factual dispute, I have endeavored to highlight the dispute.

Defendant Kitts filed a motion to dismiss. Doc. 42. The Court granted in part and denied in part Kitts's motion, resulting in some but not all claims against that Defendant being dismissed. Doc. 66. No other dispositive motions have been filed. The parties have been engaged in discovery.

Plaintiff's Motion concerns whether she can obtain certain discovery from BHA about its decision-making process. Defendants argue that the information Plaintiff seeks is protected by attorney-client privilege. Plaintiff argues that if the information were privileged, Defendants waived the privilege. Plaintiff also argues the crime-fraud exception would apply to the requested information, invalidating any claim of privilege.

To understand the dispute, it is important to understand the structure of BHA and the roles of the individual Defendants. BHA is a housing authority established under Georgia law and governed by a set of bylaws. See O.C.G.A. §§ 8-3-1 to -137 & Doc. 74-12 (BHA's bylaws). For the most part—and for all relevant purposes in this case—BHA's bylaws were consistent with the state statutes governing and establishing housing authorities. For example, BHA's powers were vested in group of Commissioners. Among the Commissioners, one was designated as Chairman and another as Vice-Chairman. BHA was able to take action through a majority vote of the Commissioners, assuming a quorum of Commissioners was present. Additionally, BHA had an Executive Director who had "general supervision over the administration and the affairs of [BHA], but subject to its direction and control." Doc. 74-12 at 3.

During the relevant period, Defendant Baker was BHA's interim executive director. Defendant Kitts was a BHA Commissioner and served as the Board of Commissioner's Chair.

3

Defendants Dobson and Dickerson were also BHA Commissioners.  Defendant Howes was BHA's human resources director.

Another individual—a non-party—is relevant as well: Pamela Bailey.  Bailey was one of BHA's Commissioners and served as the Vice Chair of the Board of Commissioners.  Vice Chair Bailey is important because Plaintiff contends that Bailey told her (Plaintiff) about conversations that Bailey had with the other BHA Commissioners and BHA's attorneys about Plaintiff's selection for the Assistant Executive Director position.  Bailey communicated with Plaintiff by text and through telephone communications.

In addition to the individuals associated with BHA, Plaintiff named Defendant McDuffie, who was the City Manager for Brunswick, Georgia at the time.  Plaintiff alleges that McDuffie is the one who told Defendants Baker and Kitts about Plaintiff's lawsuit against her former employer.

Much of the current dispute concerns a special meeting of the BHA Board of Commissioners that occurred on September 1, 2022.  The attendees at that meeting discussed Plaintiff's employment with BHA.  Bailey contacted Plaintiff and told her about what happened at the September 1, 2022 meeting.[2]

According to Plaintiff, Bailey said the September 1, 2022 meeting was attended by seven individuals: three BHA Commissioners (Bailey, Defendant Kitts, and Defendant Dickerson); BHA's Interim Executive Director (Defendant Baker); BHA's consultant (non-party Hycall Brooks); and BHA's attorneys (non-parties Ben Hartman and Sarah Lamar).  Bailey said the attendees discussed the following: (1) Plaintiff's lawsuit against her previous employer; (2) a

---

[2]     At this point, the only evidence about what Bailey told Plaintiff comes from Plaintiff.  Bailey has not been deposed and, it appears, has not confirmed or denied any of Plaintiff's assertions about what she (Bailey) said previously.  The descriptions here of what Bailey said are simply Plaintiff's accounts of what Bailey said.

conversation Kitts and Baker had with McDuffie about Plaintiff's previous lawsuit; (3) Howes's research about Plaintiff's previous lawsuit; (4) Kitts and Baker's plan to not hire Plaintiff because of the previous lawsuit; (5) Bailey's objection to the plan to not hire Plaintiff; (6) Brooks's statement that Plaintiff might sue BHA and that was a reason for not hiring Plaintiff; (7) Baker's inquiry about whether Plaintiff could sue BHA; and (8) attorney Hartman's response that "[Plaintiff] can sue for anything" and that Baker had to make the decision about whether to hire Plaintiff.  Doc. 74 at 5–6.  Bailey told Plaintiff that BHA's attorneys did not advise BHA that it was illegal to refuse to hire someone because they filed a federal civil rights lawsuit.  Bailey complained to Plaintiff about the attorneys' failure to give any advice on this issue.  Bailey also told Plaintiff that she (Plaintiff) needed to get her own lawyer.  Plaintiff states that two weeks after the September 1, 2022 meeting, BHA's attorney sent her a letter stating that BHA had no position of employment available for Plaintiff.

Plaintiff contends that she is entitled to conduct discovery on matters that BHA discussed with its counsel about firing (or not hiring) Plaintiff.  Doc. 74.  Specifically, Plaintiff asks the Court to compel BHA to produce certain documents that BHA claims are protected by the attorney-client privilege.  Plaintiff makes three arguments about BHA's privilege claims.

First, Plaintiff contends that, if BHA discussed the hiring decision with its lawyers and the conversation was privileged, it is no longer privileged because the privilege has been waived. Plaintiff argues that Vice Chair Bailey waived any privilege for those communications when Bailey described the September 1, 2022 meeting between BHA and its attorneys.  Plaintiff also argues that subject-matter waiver extends the waiver to all documents related to BHA's hiring decision.  Defendant argues Vice Chair Bailey did not waive BHA's attorney-client privilege because she did not have the authority to waive privilege.  Doc. 76.

Second, Plaintiff argues that the requested documents are not protected by privilege because the crime-fraud exception applies to those documents, namely because BHA communicated with its lawyers in furtherance of a conspiracy to deprive Plaintiff of her civil rights in violation of 28 U.S.C. § 241.  Doc. 74 at 15–18.  BHA argues the crime-fraud exception is not applicable because Plaintiff has not shown BHA's attorneys' advice was used "in furtherance" of a crime.  Doc. 76 at 12–17.

Plaintiff's third argument concerns a subset of the requested documents: BHA's communications with BHA's consultant, Hycall Brooks.  Doc. 74 at 18.  Plaintiff argues that BHA waived attorney-client privilege for all communications involving Brooks because Brooks was a non-necessary third party.  Plaintiff also argues that some of the communications involving Brooks are simply not privileged because there is no protected attorney-client information in the communication.  BHA contends that communications with Mr. Brooks remain privileged because he is part of the control group, and he provided input to BHA's executive director and Board related to matters involving Plaintiff and this litigation.  Id. at 9–10.

As relief, Plaintiff asks the Court to review in camera any documents that BHA claims are privileged and that the Court does not order BHA to produce.  Plaintiff also asks the Court to compel BHA to provide supplemental interrogatory responses, based on BHA's previous objections based on privilege.  Plaintiff also argues that BHA's privilege log is insufficient and must be supplemented.  Id. at 18–20.

## LEGAL STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Upon a showing of good cause, a court may order discovery of "any matter relevant to the subject matter involved in the action."  Id.

Further, a party may ask the opposing party to produce documents or items within the scope of discovery and in another party's possession or control. Fed. R. Civ. P. 34(a)(1) ("A party may serve on any other party a request . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information . . . ."). When a party fails to answer an interrogatory or fails to produce a requested document or item, the court may order that party to respond. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). Additionally, Federal Rule of Civil Procedure 37(a)(4) states, "For the purposes of this subdivision (a), an evasive or incomplete designation, answer, or response must be treated as a failure to disclose, answer, or respond."

Much of the parties' arguments concern the attorney-client privilege. "The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." In re Grand Jury Matter No. 91-01386, 969 F.2d 995, 997 (11th Cir. 1992) (quoting In re Slaughter, 694 F.2d 1258, 1260 (11th Cir. 1982)). "Thus, in order to claim attorney-client privilege the proponent of the privilege must prove that what is sought to be protected is (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A., 519 F. Supp. 3d 1184, 1197 (S.D. Fla. 2021).

## DISCUSSION

### I.    Vice Chair Bailey Lacked the Authority to Waive BHA's Attorney-Client Privilege

The parties dispute whether Vice Chair Bailey could waive privilege for otherwise protected communications between BHA and its counsel. Plaintiff argues that Vice Chair Bailey

was able to waive BHA's privilege because Bailey had the authority to sign contracts and other instruments for BHA in the Chairman's absence, she was a necessary participant in the September 1, 2022 meeting with attorneys, and she involved herself in the matter by serving as an intermediary between BHA and Plaintiff.  Doc. 77 at 2.  Plaintiff argues that BHA's bylaws state that the Vice Chair has the powers of the Chair whenever the Chair is not present.  Plaintiff maintains that BHA's Chair (Defendant Kitts) was not present when Bailey called Plaintiff and described the September 1, 2022 meeting, so Vice Chair Bailey had the authority to waive privilege, just as Defendant Kitts could have done.[3]  Id. at 2–3.

BHA disagrees.  Doc. 76 at 6.  BHA contends that Bailey did not have the authority to waive privilege on its behalf.  BHA states that its business is conducted only at its regular meetings and by a majority vote of BHA's Commissioners.  Doc. 78 at 2.  BHA acknowledges the bylaws provision that allows the Vice Chair to act in the absence of the Chair, but BHA argues that provision only applies to regular meetings where the Chair is absent.  BHA argues that the provision cannot be read to mean that the Vice Chair can act unilaterally on behalf of BHA any time the Vice Chair is not physically present with the Chair.

"The attorney-client privilege 'belongs solely to the client,' who may waive it either expressly or by implication."  Knox v. Roper Pump Co., 957 F.3d 1237, 1248 (11th Cir. 2020) (quoting Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994)).  "[W]here there has been a disclosure of a privileged communication, there is no justification for retaining the privilege."  Cheeves v. S. Clays, Inc., 128 F.R.D. 128, 129 (M.D. Ga. 1989).  "The general

---

[3]     The parties appear to agree that the conversation at the September 1, 2022 meeting were privileged.  Indeed, the meeting occurred, at least in part, because Vice Chair Bailey asked for the meeting so that the Board could discuss decision to hire (or not hire) Plaintiff with BHA's attorneys.  Regardless, the parties do not dispute whether the conservation was privileged and, instead, only argue whether Bailey could waive that privilege.  Therefore, I assume that the conversation was privileged.

rule is that voluntary disclosure of privileged attorney-client communication constitutes waiver of the privilege as to all other such communications on the same subject matter." Id. "For that reason, it has long been held that once waived, the attorney-client privilege cannot be reasserted." Gibson-Carter v. Rape Crisis Ctr., No. 4:19-CV-122, 2020 WL 2815122, at *11 (S.D. Ga. May 29, 2020) (citing United States v. Suarez, 820 F.2d 1158, 1160 (11th Cir. 1987)). "The burden lies with the claimant of the privilege to prove that it has not been waived." Id. at *12.

In a corporation, "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985). "Although the contours of government waiver are not as clearly established, the same logic has been applied to allow local government agents to waive the privilege if they have been delegated authority to bind the government with respect to particular subject matter." Oasis Int'l Waters, Inc. v. United States, 110 Fed. Cl. 87, 106 (2013) (citing Interfaith Hous. Del., Inc. v. Town of Georgetown, 841 F. Supp. 1393, 1399–1400 (D.Del.1994).

The decision in Gibson-Carter v. Rape Crisis Center provides some insight on how the Court should evaluate whether Vice Chair Bailey had the authority to waive BHA's privilege. 2020 WL 2815122 (S.D. Ga. May 29, 2020). In Gibson-Carter, a board member of a nonprofit entity provided an investigative report (which was claimed to be privileged) to a former employee. The Court had to determine whether the board member had the necessary authority to waive attorney-client privilege for the entity. In assessing the board member's authority, the Court closely scrutinized the statutory provisions that govern nonprofit entities and, specifically, the provisions that describe the powers of board members and modifications to those powers

through articles of incorporation and bylaws.  Id. at 13.  The Court noted that other courts also consider an employee's authority to waive privilege in the context of statutes governing the employee's duties and authorities.  Id. (discussing Sampson v. Sch. Dist. of Lancaster, 262 F.R.D. 469, 478–80 (E.D. Pa. 2008)).  Indeed, both parties appear to agree that Vice Chair Bailey's authority to waive BHA's privilege depends on the scope of her authority under the applicable Georgia statutes and BHA's bylaws.

Both parties rely on Oasis International Waters, Inc. v. United States to support their position on whether Bailey did, or did not, have the authority to waive BHA's privilege. Plaintiff argues the court in Oasis determined that if a governmental employee has the authority to bind his employer to contracts, then the employee can also waive attorney client privilege. Doc. 74 at 9.  Plaintiff contends Bailey had the necessary authority.  BHA disagrees, arguing that Oasis shows that a governmental employee can only waive privilege if handling legal matters is an integral part of the employee's duties and Plaintiff has not shown that handling legal matters was an integral part of Vice Chair Bailey's duties.  Doc. 76 at 7–8.

Plaintiff reads Oasis too broadly, and Defendants read Oasis too narrowly.  In Oasis, the court considered whether a contracting specialist and a contracting officer for the U.S. Army could waive attorney-client privilege for communications about the award and administration of a particular contract.  The court concluded that the contracting officer could waive privilege because the officer also had the authority to enter into the particular contract and bind the Army. The court explained that "the disclosure of information relating to a government contract is an 'integral part' of a contracting officer's duties."  Id. at 112 (quoting H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989)).  The court, however, determined that the contract

specialist could not waive the privilege because he held only a support role to the individual whose responsibility it was to administer the contract.  Id. at 113.

The Oasis decision demonstrates that the authority of a governmental employee to waive attorney-client privilege will depend on whether the employee has sufficient authority to act (and bind the employer) relative to the subject matter of the communication.  Oasis does not stand for broader proposition—advanced by Plaintiff—that any employee who can bind an entity in contract can also waive that entity's privilege protections in all circumstances.  Oasis also does not stand for the narrow proposition—advanced by Defendants—that only employees who are responsible for legal matters can waive an entity's privilege.  Instead, the authority to waive privilege depends on the employee's authority to bind the entity on the subject matter discussed in the disputed communication.  With this framework in mind, the Court considers whether Vice Chair Bailey had the authority to waive BHA's privilege over communications with BHA's counsel about the decision to hire (or not hire) Plaintiff.

Georgia Code Section 8-3-51(a) governs the creation and administration of housing authorities under Georgia law.  That section states:

> The powers of each authority shall be vested in the commissioners thereof in office from time to time.  Three commissioners shall constitute a quorum of the authority for the purpose of conducting its business and exercising its powers and for all other purposes.  Action may be taken by the authority upon a vote of a majority of the commissioners present, unless in any case the bylaws of the authority shall require a larger number.

Section 8-3-51(e) of the Georgia Code also states, "An authority may delegate to one or more of its agents or employees such powers or duties as it may deem proper."

Both parties point to the BHA bylaws to argue whether Vice Chair Bailey had authority to waive attorney-client privilege. Article 2 of the BHA bylaws describes the roles of BHA's individual officers. Doc. 74-12. Article 2, Section 1 states:

> The officers of the Authority shall be a Chairman, a Vice-Chairman, and a Secretary-Treasurer, the latter officer to be combined in one person who shall serve without compensation and who shall be a member of the commission, but this office may be transferred to one not a member of the commission at a salary, and the person to whom such office shall be transferred shall be known also as the Executive Director.

Article 2, Section 2 describes the role of the Chairman:

> The Chairman shall preside at all meetings of the Authority except as otherwise authorized by resolution of the Authority. The Contracting Officer shall sign all contracts, deeds and other instruments made by the Authority. At all meetings, the Chairman shall submit such recommendations and information as he may consider proper concerning the business affairs and policies of the Authority.

This is the only instance of the term "Contracting Officer" in BHA's bylaws and the term is not defined. The term also does not appear in the Georgia statutes governing housing authorities. Article 2, Section 3 describes the role of the Vice-Chairman:

> The Vice-Chairman shall perform the duties of the Chairman in the absence of the latter; in case of the resignation or death of the Chairman, the Vice-Chairman shall perform such duties as are imposed on the Chairman until such time as the Authority shall appoint a new Chairman.

Id.

The governing Georgia statutes state, "Action may be taken by the authority upon a vote of a majority of the commissioners present." O.C.G.A. § 8-3-51(a). Article 3, Section 6 of the BHA bylaws says essentially the same: "All resolutions adopted and all business transacted by the Board shall require the affirmative vote of a majority of the members present at the meeting." Doc. 74-12 at 5.

Considering the governing Georgia statutes and BHA's bylaws, Vice Chair Bailey did not have the authority to waive BHA's attorney-client privilege over communications between

BHA and its lawyers about the decision to hire (or not hire) Plaintiff.  It is clear from the statutes and the bylaws that all business transacted by BHA and its Board had to be conducted by a majority vote of BHA's Commissioners.  To the extent the Board was responsible for hiring Plaintiff for the position of Assistant Executive Director, that action would have required a majority vote of BHA's Commissioners.[4]  Nothing in the statutes suggests an individual Commissioner could take unilateral action, including the Vice-Chairman.

Plaintiff's argument concerning the provision in the bylaws empowering the Vice Chair to "perform the duties" of the Chair in the Chair's absence is unconvincing.  A plain reading of the bylaws demonstrates that this provision does not mean literal physical presence or absence but, instead, describes the Chair's temporary absence from Board meetings or inability to perform his duties.  Indeed, the Vice Chair provision explains that one form of absence is "resignation or death" of the Chair, in which case the "in the absence" provision extends Vice Chair's interim duties until the appointment of a new Chairman.  If Plaintiff's reading of the Bylaws were correct—that the Vice Chair can sign any contract or instrument on behalf of the Authority any time the Chairman and Vice Chair are not in the same physical place—the "resignation or death" provision would be wholly unnecessary.  Plaintiff's reading of the bylaws is implausible.

Additionally, the Chairman's authority to sign documents for BHA is limited to signing "contracts, deeds and other instruments *made by the Authority*."  Doc. 74-12 at 2 (emphasis

---

[4]    It is unclear from the record and the briefing whether hiring decisions were delegated from the Board to anyone else at BHA, such as the Executive Director or the Director of Human Resources.  It is also unclear whether the Board ever voted on Plaintiff's selection for the Assistant Executive Director position, though there is an indication that the Commissioners voted on the appointment of Defendant Baker as the Interim Executive Director.  Doc. 77-1 at 11.  Regardless, Plaintiff has failed to provide any evidence that a single Commissioner like Bailey could act unilaterally in hiring an Assistant Executive Director.

added).  The phrase "made by the Authority" demonstrates that BHA must agree to enter into a contract before the Chairman is allowed to sign it.  The voting provision, in turn, states, "All resolutions adopted and all business transacted by the Board shall require the affirmative vote of a majority of the members present at the meeting."  Id. at 5.  This means any contract the Chairman is empowered to sign must have been voted on and agreed to by the BHA board, demonstrating a single commissioner—including the Chairman or Vice Chair—cannot unilaterally bind BHA to a contract.  Ultimately, the plain language of the bylaws undermines Plaintiff's argument that Vice Chair Bailey had the authority to unilaterally waive BHA's privilege.

Plaintiff also argues, as a legal matter, that BHA must show that Vice Chair Bailey was expressly prohibited from waiving BHA's privilege by a clear provision in the bylaws or the governing statutes.  Doc. 74 at 10 (citing Gibson-Carter for the proposition that the Court rejected any limitation on the authority to waive privilege by a board member because "the statute governing non-profits did not foreclose the exercise of such authority by an individual board member").  This argument is unconvincing, as well.  In Gibson-Carter, the case Plaintiff relies on, the Court noted that a statute that delineates the parameters of a board member's authority to act on behalf of an entity is critical to determining the member's authority to waive privilege.  Gibson-Carter, 2020 WL 2815122, at *12 (citing Sampson v. Sch. Dist., 262 F.R.D. 469 (E.D. Pa. 2008)).  Here, BHA has pointed to governing Georgia statutes and BHA's bylaws that delineate a housing authority commissioner's powers, and those provisions do limit a commissioner's power to act unilaterally, particularly on important matters like hiring decisions.  Thus, BHA has sufficiently demonstrated that Vice Chair Bailey did not have the authority to unilaterally waive BHA's privilege.

In sum, Vice Chair Bailey was not empowered to unilaterally sign contracts or waive attorney-client privilege. Vice Chair Bailey could not, and did not, waive privilege for BHA. The Court, therefore, **DENIES** Plaintiff's request to compel BHA to produce the communications about Plaintiff's employment.[5]

## II.    The Court Denies Plaintiff's Request for the Court to Compel Defendants to Produce Communications Involving Hycall Brooks

This Section concerns the parties' dispute over communications on BHA's privilege log involving BHA's consultant, Hycall Brooks. It appears the relevant facts are largely undisputed.

At the outset, it is important to explain Brooks's role. Brooks is a lawyer, and he is admitted to practice in the State of Alabama. Doc. 74 at 11. Even so, Brooks was not serving as a lawyer in any way germane to this case, and he did not provide any relevant legal advice to any party in this case. Rather, BHA hired Brooks in July 2022 to provide consulting services on employment matters. Doc. 74-14 at 2. The consulting agreement expressly disclaims the existence of any attorney-client relationship and makes clear that the agreement is not one for legal services. Id.

The consulting agreement between BHA and Brooks outlines the scope of consulting: "Including but not limited to provide strategic planning consultation, employment training, Equal Employment Audit, Employee Handbook review, grant advisement, Federal Regulation Compliance concerning residents." Id. at 6. According to BHA, it engaged Brooks to provide consulting services on "employment related and other matters, including regulatory compliance, grant opportunities, and $100 million broadband grant." Doc. 76-4 at 2. BHA routinely looked

---

[5]    Plaintiff argues that Bailey's waiver of the privilege over communications at the September 1, 2022 meeting extends to all communications involving Hartman and Lamar on the same subject matter (i.e., Plaintiff's employment). Doc. 74 at 10. Because I have determined Vice Chair Bailey did not waive attorney-client privilege, there is no subject matter waiver for other communications about Plaintiff's employment.

to Brooks for his expertise in employment matters and would seek guidance before making employment-related decisions.  Id.

As a consultant, Brooks was "heavily involved" in BHA's decision to hire (or not hire) Plaintiff.  Doc. 76 at 9.  Indeed, Brooks was present at, and participated in, the September 1, 2022 meeting of BHA's Commissioners.  At that meeting, Brooks told the attendees that Plaintiff might sue BHA at some point in the future, given that Plaintiff had sued a previous employer.

BHA provided a privilege log during discovery.  Doc. 74-13.  Several of the documents on that log were sent by, received by, or copied Brooks.  Plaintiff now argues that those documents are not privileged and BHA should be required to produce the documents.  Plaintiff makes several arguments.

The Court can easily dispose of one of Plaintiff's arguments.  In her opening Motion, Plaintiff stated, "BHA argues that because Mr. Brooks is a lawyer licensed to practice law in Alabama . . . BHA can invoke the attorney-client privilege with respect to communications with him."  Doc. 74 at 11–13.  Anticipating BHA's argument, Plaintiff argued that Brooks was not providing legal services to BHA and the consulting agreement expressly disclaimed the existence of an attorney-client relationship.  Id.  But BHA does not make the argument that Plaintiff anticipated.  Instead, BHA argues that the disputed communications *do not lose* privilege protections merely because they were sent to Brooks because Brooks was part of BHA's "control group."  In other words, BHA does not contend that Brooks was a lawyer providing legal assistance, BHA argues that privileged communications that were shared with Brooks retain their protection even though Brooks was not a BHA employee or BHA's counsel.  Therefore, I need not address further this argument in Plaintiff's opening Motion.

Plaintiff's next argument is also subject to quick resolution. In her Reply, Plaintiff responds to BHA's argument that Brooks was part of the "control group." Plaintiff contends that many of the communications on the privilege log involving Brooks cannot be privileged because those communications "predate the formation of the attorney-client relationship" between BHA and its outside counsel, Hartman and Lamar. Doc. 77 at 4. Plaintiff relies on an email from Hartman, dated August 2, 2022, stating that Hartman and Lamar "have been asked to advise" BHA on Plaintiff's hiring. Id. (citing Doc. 77-4). Plaintiff argues that no communication before August 2, 2022, could be privileged.

BHA rejects the factual premise of Plaintiff's argument. BHA contends that Hartman and Lamar's law firm has been "appointed as BHA's legal officer since 2011." Doc. 78 at 3. BHA also points to an email from July 5, 2022, from Hartman to Defendant Kitts—which Plaintiff also relies on in her briefing—as proof that an attorney-client relationship between BHA and Hartman and Lamar's firm existed long before the August 2, 2022 email. Id. (referring to Doc. 77-3).

To the extent Plaintiff's argument is based on a start date of August 2, 2022, for the attorney-client relationship, Plaintiff has not established that fact. The documents in the record suggest that the attorney-client relationship existed long before that date. Indeed, Plaintiff has not countered BHA's assertion that Hartman and Lamar's firm has been appointed as legal officer since 2011. I, therefore, reject this portion of Plaintiff's argument.

Plaintiff's remaining arguments are more difficult to resolve. Plaintiff argues that Brooks was not part of BHA's "control group." BHA argues that Brooks was part of the "control group" because he was "an integral part of" and "heavily involved in" BHA's executive decision-making process when BHA considered hiring Plaintiff. Doc. 76 at 8–9. Plaintiff disagrees,

arguing that the consulting agreement does not contemplate Brooks serving in the "executive decision-making process" or "providing or helping to secure or apply legal advice."  Doc. 77 at 4–5.

Both parties rely on Upjohn Company v. United States, 449 U.S. 383 (1981).  Doc. 76 at 9; Doc. 77 at 5.  In Upjohn, the Supreme Court of the United States stated, "The control group test adopted by the court below thus frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation."  449 U.S. at 392.  Thus, the Supreme Court recognized that the "control group" test was not often appropriate to identify the outer boundaries of attorney-client privilege, given that lower-level employees often possess relevant information and often participate in investigations.  Id. at 393.  Further—and perhaps more importantly—the "control group" test typically relates to communications within an organization.

The parties' briefing on this point is insufficient.  Brooks was a consultant, not a BHA employee.  As a result, Upjohn on its own provides little or no guidance.  The parties have not provided relevant authority or argument concerning the limits on privilege for communications provided to outside consultants or "employee equivalents."  See Berisha v. Lawson, 973 F.3d 1304, 1317 (11th Cir. 2020) (discussing the employee-equivalent doctrine, as an extension of Upjohn, under New York law).  For example, it is not clear if the parties agree that the employee-equivalent doctrine applies here or whether there is agreement on what the Court should consider under that doctrine.  E.g., id. at 1318 (discussing whether employee-equivalent parties should be evaluated under agency law principles).

18

As an alternative, Plaintiff argues that even if Brooks were part of BHA's control group, a subset of the communications he sent or received are still not privileged—namely, communications where BHA's lawyers were not included.  Doc. 77 at 5.  Plaintiff contends Brooks was, at most, "an 'outside' human resources representative."  Id.  Plaintiff argues that communications with an "outside human resources representative" that do not include lawyers or are only for investigative purposes are not privileged.  Plaintiff cites no controlling authority for this proposition.[6]  BHA does not respond to this argument.

The parties' briefing on communications involving Brooks is inadequate.  The parties do not fully address the controlling legal standard.  The parties appear to rely almost exclusively on the scope of the consulting agreement, but it is not clear if that is the only relevant fact or the controlling fact.  To the extent Plaintiff asks the Court to conduct in camera review of all (or a subset of) communications involving Brooks on BHA's privilege log, that request is premature.  If Brooks is not within BHA's privilege, then it is unlikely that any documents he sent, received, or was copied on retain their privilege.  If, on the other hand, Brooks remained within BHA's privilege—under an employee-equivalent theory or otherwise—Plaintiff may seek to challenge BHA's privilege assertions for some, or none, of the communications.

---

[6]    Plaintiff cites In re Vioxx, 501 F. Supp. 2d 789, 796–97 (E.D. La. 2007).  That case is not controlling, and even if it were, it does not resolve the issue.  The court in In re Vioxx merely noted that communications that involve a mix of legal and business advice are thorny questions and depend on assessment of the primary purpose of the communication.  The case does not support Plaintiff's categorical argument.  Moreover, Upjohn—on which the parties rely—contemplates that documents prepared by lower-level employees in furtherance of an investigation, and at the urging of counsel, may be privileged.

For these reasons, I **DENY without prejudice** Plaintiff's request to compel all communications involving Brooks and Plaintiff's request to conduct in camera review of those communications.  Plaintiff may, however, renew this argument in a new motion to compel.  If Plaintiff elects to do so, she must file her motion within 21 days of the issuance of this Order. Plaintiff's motion to compel shall be limited to not more than 10 pages and shall only address the question of privilege over communications involving Brooks.  Failure to file the motion within that time will be deemed a waiver by Plaintiff of any challenge on this issue.  Defendants shall have 14 days to respond to any forthcoming motion to compel.  Defendants' brief shall be not more than 10 pages.  No additional briefing is permitted.  The parties are encouraged to confer on this issue prior to submitting their additional briefs.

## III.    The Crime-Fraud Exception Does Not Apply

This Section concerns emails between BHA and its counsel before September 16, 2022, the date when Plaintiff was finally terminated.  BHA says these emails are privileged because BHA was asking for legal advice about whether to hire Plaintiff.

Plaintiff disagrees and argues the crime-fraud exception applies.  Doc. 74 at 16.  Plaintiff contends that Defendant Baker (BHA's Interim Executive Director) and Defendant Kitts (BHA's Chairman) were in a criminal conspiracy to deprive Plaintiff of her rights.  Plaintiff asks the Court to conclude the emails are not privileged and order BHA to produce the emails. Alternatively, Plaintiff asks the Court to review the emails in camera.

BHA says that the crime-fraud exception does not apply here.  Doc. 76 at 12.  BHA argues Plaintiff has not offered any proof that the communications were made in furtherance of a crime.  BHA opposes an order compelling production and any in camera review of the emails.

Plaintiff has not shown that the crime-fraud exception applies to these communications. Under the crime-fraud exception, attorney-client privilege does not protect communications that are made in furtherance of a crime or fraud. Courts in this Circuit use a two-part test to determine the applicability of the crime-fraud exception:

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

United States v. Clecker, 265 F. App'x 850, 853 (11th Cir. 2008) (quoting Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1416 (11th Cir. 1994)). "The first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." In re Grand Jury Investigation, 842 F.2d 1223, 1226 (11th Cir. 1987). "The second prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong." Id. at 1227.

In some instances, in camera review of documents should be conducted to determine if the documents are subject to the crime-fraud exception. Before engaging in in camera review, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." United States v. Zolin, 491 U.S. 554, 571 (1989). Once that showing is made, the decision whether to conduct an in camera review rests in the sound discretion of the district court. Once the initial showing is made, whether in camera review is appropriate depends on:

[T]he facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

Id.

I conclude Plaintiff has not met her burden to satisfy the second prong of the crime-fraud exception, namely that BHA obtained counsel's assistance in furtherance of a crime or closely related to a crime.[7]  Plaintiff cites three main pieces of evidence: (1) the District Judge's Order on Defendant's motion to dismiss, doc. 66; (2) two interrogatory responses from Defendant Howes; and (3) Plaintiff's affidavit describing a conversation with Vice Chair Bailey about a meeting where Plaintiff's potential employment was discussed, doc. 74-1.  This evidence does not show that legal advice was obtained in furtherance of or closely related to a crime.  Plaintiff's evidence only shows her previous lawsuit was mentioned at a meeting and in a previous conversation with Defendant Howes.  By Plaintiff's own allegations, BHA's counsel did not provide any discernible legal advice at the September 1, 2022 meeting.  Consequently, Plaintiff cannot show that any legal advice was obtained in "furtherance" of or closely related to any

---

[7]    The parties' briefing on the first prong of the crime-fraud exception is a bit unclear.  Plaintiff argues that the ruling on Defendant Kitts's motion to dismiss shows that she has made a prima facie showing that Defendants were engaged in criminal conduct because the Court concluded that Plaintiff alleged sufficient facts to support a 42 U.S.C. § 1985(2) retaliation claim.  Plaintiff contends 28 U.S.C. § 241 is the criminal counterpart to 42 U.S.C. § 1985.  Plaintiff points to Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336, 1344 (N.D. Ga. 2009), where the court concluded that the plaintiff's retaliation claim sufficiently alleged conduct that would qualify as a criminal conspiracy in violation of § 241.  But the court in Aque was not evaluating whether the plaintiff had made a prima facie showing for the purposes of the crime-fraud exception.  BHA, for its part, argues that Plaintiff has not presented any factual support for her claim that legal assistance was obtained in furtherance of a crime and, instead, Plaintiff merely relies on temporal proximity.  Thus, it is unclear if BHA is even arguing that Plaintiff failed to satisfy the first prong.  BHA is certainly correct that establishing the crime-fraud exception requires a "factual basis" and requires "more than mere allegations or suspicions."  Tindall v. H & S Homes, LLC, 757 F. Supp. 2d 1339, 1353 (M.D. Ga. 2011).  Regardless, because I conclude that Plaintiff has not carried her burden on the second prong, I decline to address the first prong.

crime.  Specifically, none of Plaintiff's evidence shows that BHA obtained any legal assistance from its attorneys in furtherance of or closely related to retaliating against Plaintiff for her previous federal lawsuit.

Plaintiff has also not made a showing sufficient to require in camera review.  Plaintiff has not shown facts to support a good faith belief that in camera review will reveal evidence of the applicability of the crime-fraud exception.  Plaintiff has only shown that BHA's officers communicated about Plaintiff with attorneys leading up to the meeting on September 1, 2022.  BHA was in the process of evaluating Plaintiff's potential employment at that time.  Plaintiff merely shows that the communications occurred close in time to the alleged crime.  But Plaintiff has not pointed to any specific communication that was obtained in furtherance of or closely related to a crime.  Plaintiff, therefore, has not made a showing sufficient to require in camera review.

In sum, Plaintiff has failed to come forward with any evidence that the communications on BHA's privilege log involving BHA's attorneys constituted efforts to obtain legal assistance in furtherance of or closely related to criminal activity or contain such legal advice.  Plaintiff merely submits a blanket request for all documents on the privilege log that involve counsel and that occurred close in time to the conduct underlying Plaintiff's claims.  This is not sufficient to support the applicability of the crime-fraud exception or to warrant in camera review of any documents.  Therefore, the Court **DENIES** Plaintiff's request.

**IV.    The Court Denies Plaintiff's Request for Defendant BHA to Submit Documents for in Camera Review**

Plaintiff argues that BHA seeks protection for "too many communications not involving any attorneys."  Plaintiff challenges 20 items on BHA's privilege log.[8] Doc. 74 at 14, nn.12, 13, 14.  Plaintiff contends that these communications are not privileged because the primary purpose of the communications was not legal advice, the communications lost their privilege because they included "non-necessary third parties," or both.  Id.; Doc. 77 at 5–6.  Fifteen of the twenty communications were sent by, received by, or copied BHA's counsel (Hartman and Lamar).[9] Five of the communications did not include counsel.[10]  The communications all involved BHA's consultant, Hycall Brooks, an administrative assistant, Christina Curry, and the Director of Housing, Joyce Cooper.  Plaintiff argues in camera review is warranted, at a minimum, because BHA withheld communications between Mr. Brooks and lower-level employees before BHA asked attorneys to assist with Plaintiff's hiring decision.  Doc. 77 at 6.

BHA argues that all communications Plaintiff identified were properly withheld as privileged.  Doc. 76 at 11.  BHA acknowledges that BHA's counsel is not included on some communications, but BHA contends these documents are privileged because they discuss legal advice obtained from BHA's counsel.  BHA emphasizes that attorney involvement in a communication does not necessarily determine whether attorney-client privilege applies.

---

[8]    BHAPRIV0007; BHAPRIV0015; BHAPRIV0016; BHAPRIV0018; BHAPRIV0019; BHAPRIV0046; BHAPRIV0071; BHAPRIV0075; BHAPRIV0078; BHAPRIV0097; BHAPRIV0101; BHAPRIV0103; BHAPRIV0107; BHAPRIV0109; BHAPRIV0111; BHAPRIV0113; BHAPRIV0132; BHAPRIV0134; BHAPRIV0135; BHAPRIV0170.

[9]    BHAPRIV0007; BHAPRIV0015; BHAPRIV0016; BHAPRIV0018; BHAPRIV0019; BHAPRIV0071; BHAPRIV0078; BHAPRIV0097; BHAPRIV0101; BHAPRIV0103; BHAPRIV0107; BHAPRIV0109; BHAPRIV0111; BHAPRIV0113; BHAPRIV0170.

[10]    BHAPRIV0046; BHAPRIV0075; BHAPRIV0132; BHAPRIV0134; BHAPRIV0135.

"The ultimate touchstone for application of the privilege as to these documents is whether the communication revealed advice from, or a request for advice made to, an attorney in some fashion." United States v. Davita, Inc., 301 F.R.D. 676, 682 (N.D. Ga. 2014).  BHA is correct that "simply because a communication is made between two corporate employees, neither of whom are attorneys, that fact is not determinative of whether that communication primarily involves business advice rather than legal advice for purposes of applying the attorney-client privilege to that correspondence." In re Denture Cream Prod. Liab. Litig., No. 09-2051, 2012 WL 5057844, at *13 (S.D. Fla. Oct. 18, 2012).  Rather, the privilege determination depends on the content of the documents and the circumstances surrounding the creation of those documents on an individual basis.  See id., at *14 (determining documents were protected from disclosure by either attorney-client privilege or work product doctrine after conducting a document-by-document review).

Plaintiff has not made any colorable claim that BHA's privilege assertions are invalid, such that would require in camera review.  Plaintiff's assertion that BHA has simply claimed that "too many" documents are claimed as privileged is not well taken.  Plaintiff must come forward with some basis for asserting that BHA has improperly invoked privilege.  Plaintiff has not done so.

Notably, for 15 of the documents, BHA's counsel was a sender, recipient, or was copied on the emails.  BHA describes these emails as communications to or from BHA counsel that involve legal advice or seeking information related to Plaintiff's claims.  Plaintiff has not provided any reason to believe that BHA's description of the emails on the privilege log is inaccurate or untruthful, aside from speculation.

As noted, five of the disputed documents do not include counsel.  That fact is not determinative.  BHA describes those emails as communications that were made for the purposes of gathering information regarding Plaintiff's claims for BHA's counsel or for conveying that information to BHA's counsel.  Again, Plaintiff has not provided any basis to believe that BHA's description is inaccurate or untruthful.  Plaintiff has also not pointed to any controlling authority that suggests that an entity's internal communications made for the purposes of gathering information for counsel to investigate potential legal claims would not be privileged.

Plaintiff insists that these communications lost their protections because non-necessary third parties were included on the communications.  For example, several communications include Christina Curry, an administrative assistant, and Joyce Cooper, BHA's Director of Housing.  Nearly all of these communications included BHA's attorneys, BHA's Commissioners, BHA's Executive Director, or BHA's Human Resources Director.  Plaintiff has not made any plausible showing that these individuals were non-necessary third parties, such that their participation on the communications would destroy privilege.  Instead, all of these individuals appear to be individuals who would have served central roles in the administration of BHA and BHA's consideration of Plaintiff for employment.

I note that many of the communications Plaintiff identified involve Hycall Brooks.[11]  As explained above, I decline to rule on whether BHA's privilege extends to Brooks.  For the same reasons, I reject Plaintiff's argument here that Brooks's inclusion on these emails destroys BHA's privilege.  Plaintiff will have any opportunity to address that issue in a subsequent motion, if she elects to do so.

---

[11]    E.g., BHAPRIV0015, BHAPRIV0018, BHAPRIV0019, BHAPRIV0097, BHAPRIV0107, BHAPRIV0109, BHAPRIV0111, and BHAPRIV0113 involve Hycall Brooks.

Ultimately, Plaintiff has failed to show that in camera review is warranted for any of the communications on BHA's privilege log.  Therefore, I **DENY** this portion of Plaintiff's Motion.

## V.    BHA's Privilege Log Is Sufficient

Plaintiff argues that BHA's privilege log is insufficient.  Eighty out of eighty-five entries on BHA's privilege log state the documents were prepared or transmitted at the direction of counsel.  Plaintiff argues this is not sufficient to support the basis for privilege.  Doc. 74 at 18.  Plaintiff asks the Court to compel BHA to produce all documents that are not privileged, conduct an in camera review of documents the Court does not require BHA to produce, or require BHA to produce a supplemental privilege log sufficiently describing the basis for privilege for each communication.  Id. at 18–19.

BHA argues its privilege log is sufficient.  Doc. 76 at 17.  BHA contends the privilege log provides information about the nature of the withheld documents that is sufficient to enable Plaintiff to make a determination about the validity of the asserted privilege.  Id.  Defendant states it included as much information as possible in the privilege log entries without disclosing the actual text of the communications.  Id. at 18–19.  BHA argues if the Court requires it to produce a supplemental privilege log, it should also require Plaintiff to produce her first privilege log.  Id. at 19.

When a party withholds information by claiming the information is privileged, the party must: "expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5).  "A privilege log is sufficient, even if not detailed, if it identifies the nature of each document for which privilege is claimed, the date of its transmission or creation, the author

and recipients, the subject, and the privilege asserted." <u>Deary v. Progressive Am. Ins. Co.</u>, No. 20-80279-CIV, 2020 WL 6365015, at *3 (S.D. Fla. Aug. 25, 2020). "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." <u>Wingo Holdings, LLC v. Northfield Ins. Co.</u>, No. 05-80587-CIV, 2006 WL 8433647, at *9 (S.D. Fla. Apr. 27, 2006) (citing <u>CSX Transp. Inc. v. Admiral Ins. Co.</u>, No. 93-132-CIV-J-10, 1995 WL 855421, at *3 (M.D. Fla. July 20, 1995)).

BHA's privilege log is adequate. For each document, the privilege log includes the date of creation, the file name, and senders and recipients of each email. Doc. 74-13. The log also includes information about other individuals who were copied on the emails. The log includes the type of privilege claimed and a description of why BHA claims the document is privileged. <u>Id.</u> The documents are described as communications providing information to counsel regarding Plaintiff's claims, communications sent at the direction of counsel, communications related to the investigation of Plaintiff's claims, or communications with counsel regarding actions related to Plaintiff's potential employment. The privilege log sufficiently establishes each element of the privilege claimed and enables Plaintiff to assess the claim. Therefore, the Court **DENIES** Plaintiff's request to compel an in camera review or compel BHA to produce a supplemental privilege log.

## VI.    BHA Is Not Required to Supplement Its Discovery Responses

Plaintiff argues that BHA's responses to Plaintiff's written discovery requests are insufficient. Plaintiff states BHA's responses are deficient and BHA has not supplemented its interrogatory responses and responses to requests for production of documents. Doc. 74 at 19–20. Plaintiff states BHA has produced many emails but did not conduct a search for the entire

time period Plaintiff specified, June 1, 2022 through March 31, 2023.  Plaintiff also states BHA

has not produced documents showing browser histories, documents from certain custodians, or

documents related to filling the Assistant Executive Director or Executive Director positions.  Id.

Plaintiff asks the Court to compel BHA to supplement responses to interrogatories numbered 5,

8, 9, 18, and 21.  Doc. 74-17.

Defendant BHA states it is working to supplement its discovery responses.  Doc. 76 at

19.  BHA states that its internal IT personnel could not retrieve the requested information, so

BHA has retained an outside vendor.  The outside vendor is conducting an extraction to search

for additional information but has not yet completed its work.  Id. at 19–20.

This dispute is not ripe for the Court's review.  BHA states information for the

interrogatory responses are located on mobile devices.  BHA states it will supplement both its

interrogatory and requests for production responses.  Additionally, Plaintiff has not identified

any specific deficiencies in BHA's interrogatory responses.[12]  At this time, there is no dispute for

the Court to resolve.  Therefore, the Court **DENIES** Plaintiff's request to compel BHA to

supplement its discovery responses.  The parties must continue to confer on this issue.  Plaintiff

may present any disputes to the Court using the informal discovery dispute resolution process

after conferral has been exhausted and after BHA has completed its supplementation.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion.  However, as explained

above, Plaintiff may, but is not required to, file a new motion to compel related to

---

[12]     Plaintiff references a Federal Rule of Civil Procedure 37 correspondence to make her deficiency
arguments.  The correspondence is attached to Plaintiff's Motion.  Doc. 74-19.  However, the attachment
is a letter Plaintiff sent to BHA upon receiving its written discovery responses.  The document is a list of
every deficiency Plaintiff identified in Defendant's responses for the purposes of conferral.  These are not
particularized arguments for the purposes of a motion to compel.

communications involving Hycall Brooks.  If Plaintiff elects to do so, she must file her motion within 21 days of the issuance of this Order.  Plaintiff's motion to compel shall be limited to not more than 10 pages and shall only address the question of privilege over communications involving Brooks.  Failure to file the motion within that time will be deemed a waiver by Plaintiff of any challenge on this issue.  Defendants shall have 14 days to respond to any forthcoming motion to compel.  Defendants' brief shall be not more than 10 pages.  No additional briefing is permitted.  The parties are encouraged to confer on this issue prior to submitting their additional briefs.

      **SO ORDERED**, this 24th day of March, 2025.

      BENJAMIN W. CHEESBRO
      UNITED STATES MAGISTRATE JUDGE
      SOUTHERN DISTRICT OF GEORGIA